LUCY A. CORSON *pro ami, vs.* ELLSWORTH DUNLAP and others.

Somerset.    Opinion June 13, 1890.

*Bastardy.    Bond.    Damages.    Scire Facias.    R. S., c. 82, § 32.*

The statutory rule, which requires, in actions on penal bonds, that judgment shall go for the penalty and execution issue for the damages sustained, when such bonds are given to secure the performance of covenants or agreements, is not restricted to cases where there is a written agreement separate from and independent of the bond itself; the agreement may be implied from the nature of the covenant in the bond; may be inferential only.

It applies to bonds where there may be several breaches at different times, *scire facias* being the proper remedy to obtain execution for damages accruing from subsequent breaches; but does not apply to cases where there can be but a single breach and a single assessment of, damages, though of harmless effect if so applied.

It applies to an action on the bond given by a respondent in bastardy proceedings, in which the order of court requires that payments be made by the principal in the bond to the complainant in installments, and there may be breaches after the first suit.

The rule of practice as indicated in *Philbrook* v. *Burgess*, 52 Maine, 271, so far as inconsistent with the rule of the present case, not to be followed in future cases.

ON EXCEPTIONS.

This was a suit on a bastardy bond. The writ is dated October 9, 1886.

Judgment was rendered for the plaintiff in the original suit at the September term, 1886, and a final decree entered, as follows : "The defendant is adjudged the father of the complainant's child, and is to stand charged with the maintenance thereof, with the assistance of the mother. The sum which he is charged with, for such support to the present time, is assessed at seventy-five dollars ; and he is ordered to pay to the complainant one dollar a week towards such support in the future, to be paid at the end of each eight weeks ; and he is ordered to give a bond to the complainant in the penal sum of five hundred dollars, with sureties to be approved by the court, conditioned for the performance of the foregoing decree ; and he is to stand committed till this order is complied with."

At the March term, 1887, the suit was carried to the law court, for the Middle District, (see *Corson* v. *Dunlap*, 80 Maine, 354) and at the May session of this court judgment was given for the plaintiff for the penal sum of the bond ; execution to issue for such damages as accrued under the order of court.

Said action was brought forward to the September term, 1888, when, with the understanding that either party should have the right to except to the ruling of the court, the presiding justice assessed the damages, as follows : "Heard in damages by the presiding justice ; judgment for penalty of the bond ; execution to issue for the amount assessed by the court in the original

action, including all sums due under the decree to last day of this term, with costs of that suit, . . . and interest on said sums, amounting to, . . . with costs of this action."

From this assessment, and the rule of assessment, the plaintiff excepted.

*J. F. Holman, Walton and Walton,* for plaintiff.

The assessment of damages as made by the court, after the rescript handed down from the May term of the law court, contemplates, without doubt, a further assessment under the order of the law court. That can not be done under the decision in *Brett* v. *Murphy*, 80 Maine, 358.

*Merrill and Coffin,* for defendant.

If plaintiff is aggrieved, it is by the order of the law court, and she should have petitioned for a rehearing. Assessment of damages is correct and furnishes no ground for exception. Accords with the general rules and practice relating to the measure of damages in suits on bonds. It is common practice to chancer bonds and issue execution for only the sum really due. 2 Sedg. Dam. 207 ; *Philbrook* v. *Burgess*, 52 Maine, 271. Bastardy bonds : *Jordan* v. *Lovejoy*, 20 Pick. 86. Assessment properly limited to last day of term. To include what might accrue after would be error, injustice and inequity. *Non constat*, whether the child would live after judgment entered ; if it did not, no further damages could arise by breach of bond. In *Brett* v. *Murphy*, the real questions were : 1, Was the respondent surrendered by his sureties in season to discharge them from their bond. 2, Should the damage, in a suit on the bond, be reduced by the insolvency of the principal ? There is a radical difference between the two classes of cases, *Philbrook* v. *Burgess*, and *Brett* v. *Carter*.

The former was an action on a bond for the support and maintenance of the obligee ; damages must from the nature of the case be assessed once for all, so much depending on personal and sentimental considerations, &c. The case does not show, even assuming that damages should be assessed once for all, that the presiding justice did not regard the amount fixed by him as an " equivalent for full performance."

PETERS, C. J.   The question is, whether, in an action on a penal bond given in bastardy proceedings, the judgment should be for the penalty, and damages be assessed so far as they have accrued at the time of the assessment, future damages to be recovered by after-process of *scire facias*, or whether judgment must be given, once for all, for all the damages that will ever be sustained, both past and prospective, where the liability of the principal in the bond is by the order of court a continuing liability.

We are of the opinion that the first named is the proper procedure.   We are induced to give an explanation for such opinion, on account of some adverse expressions on the point, to be found in our own cases.

The decision of the question depends on the construction to be given to a section of our statutes, and upon the scope and effect of such section, in view of the equity powers anciently accorded to courts of law, in this branch of practice.   The section referred to, R. S., c. 82, § 32, is as follows :   "In actions on bond or contract in a penal sum, for the performance of covenants or agreements,  .  .  .  when the jury finds the condition broken, they shall estimate the plaintiff's damages, and judgment shall be entered for the penal sum, and execution shall issue for such damages and costs."

This provision applies to actions on bonds containing a penal clause, where there may be breaches of the bond at different times.   The portion of the section which requires a judgment for the penalty does not apply to a bond conditioned to pay a single sum on a day certain, because in such case there can be but one breach and one assessment; and no necessity exists for retaining the penalty as a security for future breaches.   But even in such case a judgment for the penalty would not be injurious to any party ; and such (merely inaccurate) judgments are to be seen occasionally on our records.

Nor does the statute extend to certain statutory bonds, bail bonds, recognizances, bonds for good behavior, bonds to do or not to do some collateral act, and the like.   These bonds, and some others, are not money or business bonds, and are not

conditioned for the security of covenants and agreements in the sense of the statute, and can be chancered by the court with much more propriety than by a jury.

In *Philbrook* v. *Burgess*, 52 Maine, 271, although the case was correctly decided, we think an erroneous opinion was expressed. That was an action of debt upon a bond which, by its terms, was to be void on condition that the defendant should maintain the plaintiff during her life. The jury were allowed to assess such damages as had accrued up to the date of the verdict, the defendant contending that damages should not have been assessed for any dereliction beyond the date of the writ. The defendant's exceptions were correctly overruled, but the court took occasion to say in the opinion that even -more damages might have been legally assessed, and that all past and prospective damages should have been assessed; and that the bond did not come within the statute for the reason that the defendant was not a party to, and personally bound by, some agreement outside of and separate from the condition of the bond itself. The decisions do not sustain that position. Much reliance was placed in the opinion upon the reasoning of the court, in *Hathaway* v. *Crosby*, 17 Maine, 448. But in the latter case the argument of the court was merely to the effect that a poor debtor's bond was not a bond in any sense securing a covenant or agreement, and that the damages should be assessed by the court, instead of by the jury, for its forfeiture. That was undoubtedly a statutory bond which, at that day, belonged to a class of obligations not coming within the particular statute in question.

No heed was paid in *Miller* v. *Miller*, 64 Maine, 484, to the rule advocated in *Philbrook* v. *Burgess*, *ante*, and judgment was entered up for the penalty of a bond given by order of court for the support of certain parties, the support to be furnished by installments, although there was no covenant or agreement except the mere condition of the bond in common form.

The case of *Brett* v. *Murphy*, 80 Maine, 358, was an action on a bastardy bond, where judgment was entered for the past

and estimated future damages, and not for the penal sum.   But
no attention was bestowed upon the point further than following
without challenge the form of procedure indicated in *Philbrook*
v. *Burgess, ante.*   And the case now before us is also reported
in the same volume (*Corson* v. *Dunlap,* 80 Maine, 354,) where
it was ordered that judgment be entered for the penal sum; the
cases accidently standing opposed to each other.

The original legislation on this form of procedure, from which
our own statute was in great measure copied, was Stat. 8 & 9
W. 3, c. 11, § 8, passed nearly two centuries ago.   The act, a
very long one, and in that respect within the fashion of its day,
extends its provisions "in all actions upon any bond or bonds,
or on any penal sum, for non-performance of any covenants or
agreements, in any indenture, deed, or writing contained."   In
Tidd's Practice, it is said, citing cases in approval of the
statement, that this statute was made in favor of defendants,
was intended to be highly remedial, and has received a very
liberal construction.   The author further says that where cov-
enants or agreements are contained "in the condition of a
bond," that is, implied by the condition, they are held to be
within the statute just as much as where they are in a different
instrument.   This construction was strongly maintained by
Lord Mansfield, in 1759, in *Collins* v. *Collins,* 2 Burr. 820.   In
that case the penalty of the bond was to be forfeited if the
defendant did not support the plaintiff and pay him a small sum
annually during his life.   There was no covenant or agreement
outside of the bond, and none in it except such as was inferable
from a penal clause and condition in ordinary form.   There was
no personal promise.   It was there objected that the statute of
William did not apply, because the action was not brought upon
a penalty for non-performance of an agreement or covenant
contained in any indenture, deed, or writing.   Lord Mansfield
is reported as making this reply : "This (bond) is an agreement
between the parties, and an agreement in writing; the condition
of the bond is an agreement in writing; and people have
frequently gone into courts of equity, upon conditions of bonds,.
as being agreements in writing, to have a specific performance
of them."

The law has ever since stood as Lord Mansfield enunciated it. We do not find that the statute has been differently interpreted where the point has been directly presented for the decision of any court. Of course, there have been numerous cases where it has been controverted whether a particular bond involves the subject matter of an agreement or not, either expressly or by implication. But we think no modern case requires, in order to bring a bond within the statute, such as our own is, that the covenant or agreement shall be an express personal obligation of the maker. The text books, digests and law dictionaries seem uniformly to express the same view. In *Gainsford* v. *Griffith*, 1 Saund. 58, note, Mansfield's doctrine is accepted, and it is there said that the statute was meant to meet cases where covenants are to be performed at different times, or moneys to be paid by installments. The question pending in the present case, though on different facts, arose in *Marvin* v. *Bell*, 41 Vt. 607, and it is there held, in a clear and cogent discussion, that the condition in the bond, in its legal effect and operation, amounts to an agreement,— is its equivalent.

Mr. Bishop, in his work on Contracts, § 1458, aptly describes the English legislation, and its effect, in the following: "For shortening the processes of justice, in 1697, the English statute of 8 & 9, Will. 3, ch. 11, § 8, provided, that, on a recovery of judgment for a penal sum in any court of record, inquiry should be made by a jury as to the amount of damages suffered from breaches which had already transpired, on payment whereof the judgment should simply remain a security against further breaches. And on there being such, the actual damage should, on *scire facias*, be in like manner ascertained. Then, in 1705, it was enacted by 4 Anne, c. 16, § 13, that, in an action on a bond with a penalty for the payment of money, if the defendant shall bring into the court where the action shall be depending all the principal money, and interest due on such bond, and also all such costs as have been expended in any suit or suits in law or equity upon such bond, the said money so brought in shall be deemed and taken to be in full satisfaction and discharge of said bond. The date of these statutes is subsequent to the

earliest settlements in this country; still, being highly remedial and beneficial, they were accepted as common law in Maryland and Pennsylvania; and, it is believed, in nearly all of our other States. And there has been more or less American legislation to the like effect." Massachusetts and Maine were governed by legislation of their own of similar effect. *Bailey* v. *Rogers*, 1 Maine, 186, 190.

But these acts had been preceded by the judicial thought. The courts had in great measure adopted devices to the same end before these acts were passed; and, although at first the practice was to invoke the aid of a chancery court for the purpose, courts of law had gradually taken the power to chancer bonds and relieve against penalties into their own hands. Though in ancient days judgment would go for the penalty of a bond, motions were resorted to, to restrain the collection of more money than a plaintiff was equitably entitled to. Many authorities illustrating the old practice are cited in Paine and Duer's Practice and in Tidd's Practice under the head of Judgment. Both before and after the statute of Anne, the practice was to allow the defendant, on his motion, to bring the whole amount of the penalty into court, and the proceedings were thereupon stayed. The plaintiff would receive only the amount of the principal, interest and costs; and, if this did not consume the amount of the penalty, the defendant was allowed to take out the remainder. It was denominated "an equitable motion to be relieved against the penalty." *Gregg's case*, 2 Salk. 596. And see cases cited, in note, in 3 Pars. Con. (6 ed.) * 157.

And in no class of cases was the privileged proceeding more invoked than in instances of bonds given to a parent or a parish against the burden of a bastard child. In *Wilde* v. *Clarkson*, 6 Term R. 303, which was an action brought on a bond given for indemnity against expense that might be suffered by reason of the then expected birth of a bastard child, Lord Kenyon, Ch. J., permitted the penalty to be paid into court, and, in the course of his opinion, remarked: "Suppose the plaintiff proceeds in this action, the judgment would be for the penalty of the bond, and one shilling nominal damages for the

detention of the debt. In actions on bonds or on any penal sums for performance of covenants, &c., the act of Parliament expressly says that there shall be judgment for the penalty; and that the judgment shall stand as a security for further breaches." The only agreement in that case was the bond itself.

In Massachusetts, where the statute is substantially like our own, the practice accords with our view on this question. *McGrath* v. *Conway*, 116 Mass. 360, and *Barnes* v. *Chase*, 128 Mass. 211, are cases where judgment was given for the penalty in bastardy bonds, and damages were assessed for so much as was due at the date of assessment under the order of court. See *Battey* v. *Holbrook*, 11 Gray, 212. In *Sevey* v. *Blacklin*, 2 Mass. 541, the court used this language: " When it shall appear in the court that the penalty is forfeited, then the equity powers of the court commence; and the judges are authorized to enter judgment for so much money as in equity and good conscience the plaintiff can claim, *unless the condition of the bond be such that further damages may arise to him by future breaches.* In such case judgment is rendered for the penalty, and execution is awarded for the damages already accrued; and the judgment is to stand as a security for future damages to be recovered by *scire facias.*" There could not be, in our judgment, a better statement of the law than the above. The procedure ordained or approved by the statute should apply where it is fitting.

And such was the intention of the English act, and of our own act. Its meaning is greater than its words. The bond itself is a covenant or agreement in all cases where the procedure fittingly applies. The bond does in effect contain a covenant or agreement though there be no remedy except by a suit on the bond, — it implies an agreement, — assumes one. It is the nature of the condition which decides whether the statute attaches to the bond or not. Some judge has said a promise may be considered as implied from the joint effect of condition and penalty. We are to look at the nature and reason of the thing. What difference of procedure should there be, in an action on the bond, whether it be conditioned to secure a written promise

or only an oral promise, as long as the penalty assures that the promise will be kept? The penalty is the effectual security, not the promise. What difference should it make, in assessing damages under a bond, whether the defendant is also liable for the same cause in some other form of action or not? What difference should there be, in assessing damages in a conditional judgment on mortgage, whether the mortgage secures written promises or merely certain sums named in the conditional clause? What difference can there be whether a penal bond be given to secure a judgment of court based on a promise or a judgment based on a tort? The judgment is as definite in the one case as the other. The statute was intended to have a wide and beneficent and not narrow operation.

The rule we act upon is not only the true exposition of the statute, but is equitable and just for all cases, and especially beneficial to both parties in the present case. If the plaintiff have a full allowance at once, there are chances that it would be improvidently expended. If the assessment of prospective damages be made in advance of the needs of the plaintiff, the defendant may be required to pay a much larger sum than may turn out to be necessary. Payment of damages as often as damages accrue, is in accordance with the original order of court, with the policy of the law, and adapted to the situation of the parties.

We regard this a suitable opportunity for changing the rule of practice followed in this State since the case of *Philbrook* v. *Burgess, ante,* so far as it is inconsistent with the present decision, inasmuch as no principle touching the title to property is effected by the change, and the ruling made below is not overruled thereby. After the present case has been published that case will not govern us as an authority on the point involved in this discussion.

*Exceptions overruled.*

WALTON, VIRGIN, LIBBEY, FOSTER and WHITEHOUSE, JJ., concurred.