Argued June 18; reversed July 28, 1931; argued on rehearing
January 5; reversed and remanded February 2, 1932

# TITLE & TRUST CO. *v.* UNITED STATES
# FIDELITY & GUARANTY CO.

(1 P. (2d) 1100, 7 P. (2d) 805)

470

*Chester A. Sheppard,* of Portland (Sheppard, Phillips & Ralston and R. B. Nason, all of Portland, on the brief), for appellant.

*Robert G. Smith,* of Portland (Roscoe P. Hurst, of Portland, on the brief), for respondent.

474

KELLY, J. It is urged that the written instrument set out in the foregoing statement of fact, being the instrument upon which this action is based, is insuffi-

cient to constitute a valid undertaking. Attention is called to the fact that no obligee is named. It is claimed that no penal sum is mentioned. It is also argued that no covenant is stated, and it is alleged that there was no consideration for its execution.

In accordance with the statutory rule, which prescribes that "for the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret," (Section 717, Or. L., Section 9-216, Oregon Code. 1930), the circumstances of the giving of this undertaking were shown by introducing in evidence the record in said suit. The learned trial judge was right in holding that the plaintiffs in the suit mentioned were the obligees. While there was no express promise to pay, nevertheless, the condition that said undertaking would be void "if the defendants carry out any decree which may be given against them not exceeding the sum of ten thousand dollars," being a condition of defeasance, if not performed, would render defendant herein liable thereon: *Philbrook v. Burgess,* 52 Me. 271. The dissolution of the temporary injunction constituted a consideration for the execution of said undertaking.

There is no statutory provision in this state for the giving of an undertaking as a basis for an order dissolving an injunction; but where such an undertaking is voluntarily given, not being prohibited by statute nor contrary to public policy, it will be enforced as a common law obligation. This principle is supported by the following cases, although none of them is a case wherein a bond was given in considera-

tion of the dissolution of a temporary restraining order: *Baker v. Bartol,* 7 Cal. 551; *Woodside v. Johnston,* 5 Alaska 99; *Barnes v. Brookman,* 107 Ill. 317; *American Exchange Bank v. Brenzinger,* 10 Ohio Dec. 208 (8 Oh. N. P. 502); *Cotton's Guardian v. Wolf,* 77 Ky. 238; *Hoy v. Rogers,* 20 Ky. 225; *Brady v. Butts,* 15 Ky. Law Rep. 127; *Gayle v. Martin,* 3 Ala. 593; *Munter & Faber v. Reese,* 61 Ala. 395; *Lowe v. Southern Surety Co.,* 227 N. W. 78; *Cavender v. Ward,* 28 S. C. 470 (6 S. E. 302); *McNerney v. Downs,* 92 Conn. 139 (101 Atl. 494), *Palmer v. Vance,* 13 Cal 553; *Pay v. Shanks,* 56 Ind. 554; *Koch v. Costello,* 93 N. J. Law 367 (108 Atl. 225); *Emanuel v. McNeil,* 87 N. J. Law 499 (94 A. 616); *Pasternacki v. O'Reilly,* 217 Mich. 56 (185 N. W. 739, 741); *Archer v. Hart,* 5 Fla. 234; *McCarty v. Gordon,* 4 Whart (Pa.) 321.

■■ The trend of modern decisions in the construction of the law appertaining to sureties is to distinguish between individual and corporate suretyship where the latter is an undertaking for a money consideration by a company chartered for the conduct of such business. The contract of an individual surety, or a "voluntary surety" as he is spoken of in some cases, will be strictly construed and all doubts and technicalities resolved in favor of the surety, such person being regarded as a favorite of the law; but an undertaking executed for a money consideration by a corporation adopting such business for its own profit, will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect: 21 R. C. L. 1160, section 200, citing *American Surety Co. v. Pauly,* 170 U. S. 133 (18 S. Ct. 552, 42 L. Ed. 977); *United States Fidelity, Etc., Co. v. United States,* 191 U. S. 416 (24 S. Ct. 142, 48 L. Ed. 242); *United States v. American Surety Co.,* 200

U. S. 197 (26 S. Ct. 168, 50 L. Ed. 437); *United States v. Bayly,* 39 App. Cas. (D. C.) 105 (41 L. R. A. (N. S.) 422); *Clark County School Dist. No. 1 v. McCurley,* 92 Kan. 53 (142 P. 1077, Ann. Cas. 1916B, 238 and note); *Standard Asphalt & Rubber Co. v. Texas Bldg. Co.,* 99 Kan. 567 (162 P. 299, L. R. A. 1917C, 490); *Champion Ice Mfg., Etc., Co. v. American Bonding, Etc., Co.,* 115 Ky. 863 (75 S. W. 197, 103 Am. St. Rep. 356); *Victor Lumber Co. v. Wells,* 139 La. 500 (71 So. 781, L. R. A. 1916E, 1110, Ann. Cas. 1917E, 1083); *Tarboro Bank v. Fidelity Etc., Co.,* 126 N. C. 320 (35 S. E. 588, Id. 128 N. C. 366, 38 S. E. 908, 83 Am. St. Rep. 682); *Cowles v. United States Fidelity, Etc.,* 32 Wash. 120 (72 P. 1032, 98 Am. St. Rep. 838 and note). Note: Ann. Cas. 1912B, 1087.

■ And in general, as the contract of surety companies are essentially contracts of indemnity, the courts ordinarily apply to them by analogy the rules of construction applicable to contracts of insurance.

■ Hence in an action on a bond written by a surety company, if the bond is fairly open to two constructions, one which will uphold and the other defeat the claim of the insured, that which is most favorable to the insured will be adopted: *Empire State Surety Co. v. Lindenmeier,* 54 Colo. 497 (121 P. 437, Ann. Cas. 1914C, 1189); *American Surety Co. of N. Y. v. Pangburn,* 182 Ind. 116 (105 N. E. 769, Ann. Cas. 1916E, 1126 and note); *VanBuren County v. American Surety Co.,* 137 Iowa 490 (115 N. W. 24, 126 Am. St. Rep. 290); *Chicago Lumber Co. v. Douglas,* 89 Kan. 308 (131 P. 563, 44 L. R. A. (N. S.) 843); *Hormel v. American Bonding Co.,* 112 Minn. 288 (128 N. W. 12, 33 L. R. A. (N. S.) 513, and note); *People v. Metropolitan Surety Co.,* 205 N. Y. 135 (98 N. E. 412, Ann. Cas. 1913D,

1180); *Tarboro Bank v. Fidelity Etc., Co.,* supra; *Cowles v. United States Fidelity, Etc., Co.,* supra; *American Surety Co. v. Pauly,* supra; *State v. Blanchard Constr. Co.,* 91 Kan. 74 (136 P. 905, Ann. Cas. 1915C, 192).

■ The doctrine of the authorities just cited distinguishes the cases cited by defendant wherein written instruments similar to the one in suit were held to be insufficient as bonds. They are cases wherein individuals are sought to be held as sureties. The case at bar is one wherein the defendant is a company chartered for the conduct of the business of suretyship for profit. By a strict construction, the undertaking in suit might be deemed to be conditional only upon the entry of a decree in said suit not exceeding the sum of ten thousand dollars and the failure of the defendants therein to comply therewith; but applying the more liberal construction, in the interest of the obligees, we hold that the failure of said defendants to comply with the decree, no matter in what amount, constitutes a breach of the terms of said undertaking.

It is stated in defendant's reply brief, in effect, that the record is devoid of any testimony to show that The E. Henry Wemme Company "did not own sufficient funds to make such trust fund."

On this point, Mr. R. G. Smith, testified as follows:

"Q. Have you been able to accumulate any of that fund as provided for in the decree?

"A. No. The United States Fidelity & Guaranty Company refuses to pay any part of it and The E. Henry Wemme Company had no assets that we could recover from and no property; a demand was made on The E. Henry Wemme Company and they refused to pay anything."

This testimony is uncontradicted.

We are not concerned with the irregularities alleged by defendant to have attended the rendition of the decree in said suit, because, with reference thereto, this is a collateral proceeding.

■ The effect of limiting the guaranty to ten thousand dollars is to restrict recovery thereon to a sum not in excess of that amount.

· ■ Having concluded that there is a valid and enforceable undertaking, and a breach thereof, we are confronted with the question of whether plaintiff herein may recover thereon. This brings us to a consideration of the terms of the will of E. Henry Wemme. This will contained bequests payable monthly during the natural lives of the legatees. It directed that the payments thereof be made by The E. Henry Wemme Company. For a time such payments were made by said company. The will also provided that The E. Henry Wemme Company should be the residuary legatee and devisee of said estate. In this way a trust was created. The E. Henry Wemme Company became trustee, and accepted that office under the terms set forth in the will. Sometime before the institution of the suit in question, The E. Henry Wemme Company refused to act further in the premises. This justified the institution of the suit and the action taken by the court of equity having for its object the execution of said trust. 39 Cyc. 320, note 39, citing *Cullam v. Mobile Branch Bank,* 23 Ala. 797; *Duncan v. Simmons,* 2 Stew. & P. (Ala.) 356; *Prince v. Barrow,* 120 Ga. 810 (48 S. E. 412); *Green v. Louisville Fidelity Trust Co.,* (1909) 134 Ky. 311 (120 S. W. 283, 20 Ann. Cas. 861); *Cutter v. Burroughs,* 100 Me. 379 (61 Atl. 767); *Burroughs v. Gaither,* 66 Md. 171 (7 Atl. 243); *Babbitt v. Babbitt,* 26 N. J. Eq. 44; *Schultz v. Blackford,* 9 Lea. (Tenn.) 431; *Johnson v. Roland,* 2

Baxt. (Tenn.) 203; *Saunders v. Harris,* 1 Head. (Tenn.) 185; *Colton v. Colton,* 127 U. S. 300 (8 S. Ct. 1164, 32 L. Ed. 138); *Batesville Inst. v. Kauffman,* 18 Wall. 151 (21 L. Ed. 775).

■ To this end, plaintiff was appointed trustee and, among other things, expressly authorized by the court of equity to institute action upon any undertaking given in said suit. Bearing in mind that this authority was given in a suit wherein Hattie E. Miller and Mamie Karlan were plaintiffs, at their instance and for their protection, it cannot be successfully argued that they would not be bound by the result of this action as completely as if it had been instituted by them personally.

■ As to the appeal prosecuted by defendant, it remains only to dispose of the question of the proper measure of damages herein. The measure of compensatory damages for breach of a bond is determined by the principles applicable to contracts generally. The object to be attained is to reimburse the obligee for actual damages sustained not in excess of the amount limited in the undertaking. Applying that rule, the measure of damages in this case would be the value of the bequests given to Hattie E. Miller and Mamie Karlan at the time of the trial of this action, but not in excess of ten thousand dollars.

The creation of a trust fund by the equity court, no matter in what amount, could neither augment nor diminish the amount of the loss sustained by the legatees in failing to receive the payments provided for in said will.

■ In the testimony, we cannot find any statement of the respective ages of these two ladies. Hence, there appears to be nothing in the record upon which

the judgment of ten thousand dollars entered herein can be supported. The trial court adopted the value of the trust fund created by the decree in equity as the measure of damages, restricting recovery, however, to the amount limited in the undertaking. Except in reference to the matter of interest accruing after demand upon an adjudicated liability, the maximum recovery is represented by the limitation expressed in the undertaking; but treating the value of the trust fund as the measure of damages was error and leads to a reversal of the case.

The question necessarily arises whether the amount recoverable should be limited to the aggregate amount of the unpaid installments of said legacies due at the time of the retrial, or whether consideration should be given to an award for loss of prospective installments. Owing to the form of the undertaking, only one recovery may be had; and, in consonance with justice and fair dealing, the award should include, not only the amount due and unpaid upon said legacies at the time of the retrial, but also an amount representing the current value of future installments, of which the legatees will be deprived by the default of The E. Henry Wemme Company in failing to carry out the terms of said decree: *Philbrook v. Burgess,* supra; *Shaffer v. Lee,* 8 Barb. (N. Y.) 412.

The plaintiff has prosecuted a cross-appeal herein, claiming that the trial court erred in failing to award interest upon the amount for which judgment was rendered from January 1, 1929, being the approximate date of an alleged demand upon defendant by plaintiff, and also urging that the trial court erred in refusing to give plaintiff judgment for one thousand dollars as a reasonable attorney's fee.

■ In making this claim for interest, plaintiff invokes the statutory rule that interest shall be payable on all moneys after the same become due: Section 57-1201, Oregon Code 1930. If the amount of the trust fund were the measure of defendant's liability, this rule might be applicable; but, as above stated, the amount of the trust fund is not the measure of damages, and, until the amount of plaintiff's loss has been determined and at least a demand made therefor, defendant cannot be charged with interest thereupon.

■ As to the matter of an attorney's fee, if we apply section 46-134, Oregon Code 1930, to the instant case, we must determine whether there is any testimony tending to show that proof of loss as therein required was filed with defendant. There is no such testimony. At most, there was only a demand for the payment of ten thousand dollars, and a refusal to pay any part of it. In no sense could this be deemed proof of the value of the legacies, nor does a refusal to pay any part of the trust fund operate as an estoppel against requiring the statutory proof of the loss actually sustained. Moreover, no estoppel is pleaded.

In this connection, it will be noted that the complaint herein does not present a demand based upon loss of the value of said legacies. Paragraph II of defendant's second, further and separate answer and defense tenders that issue.

Reversed and remanded.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.

Former opinion adhered to on rehearing February 2, 1932.

## ON HEARING
(7 P. (2d) 805)

*Chester A. Sheppard,* of Portland (Sheppard, Phillips & Ralston and R. B. Nason, all of Portland, on the brief), for appellant.

*Robert G. Smith,* of Portland (Roscoe P. Hurst, of Portland, on the brief), for respondent.

KELLY, J. Both parties herein insist that in our original opinion we have modified the decree rendered in the case of Hattie E. Miller and Mamie Karlan, The E. Henry Wemme Company, The Overlook Land Company and the United States National Bank of Portland, Oregon, which case, for convenience, hereafter will be referred to herein as the Miller-Wemme case.

It is true that, in the complaint in the case at bar, it is alleged that, by the terms of the undertaking upon which this action is based, the defendant herein undertook and agreed to pay any judgment rendered in the Miller-Wemme case against the defendant therein, The E. Henry Wemme Company, not to exceed ten thousand dollars ($10,000). It is also true that the only judgment, as distinguished from a decree, rendered against The E. Henry Wemme Company in the Miller-Wemme case, is a judgment "for the sum of thirty-five dollars per month for the term beginning with the month of March, 1927, and till the month of November,

1928, inclusive, with interest on such sums of thirty-five dollars from the last day of March, 1927, and the last day of each succeeding month." It would logically follow that a breach of the undertaking in suit would render defendant herein liable only for the amount of said judgment, if the covenant contained in such undertaking was as alleged in the complaint herein; but there is no such promise or agreement in the undertaking in question.

In the case at bar, the defendant in its answer alleges: "That the said undertaking was made, executed and delivered for the sole and only purpose of saving harmless Hattie E. Miller and Mamie Karlan from damages they may or might have sustained by and through the failure of The E. Henry Wemme Company and The Overlook Land Company to carry out a certain decree of the above entitled court made and entered heretofore in the case of Hattie E. Miller and Mamie Karlan, plaintiffs, v. The E. Henry Wemme Company, The Overlook Land Company and United States National Bank of Portland, Oregon," etc. Moreover, a copy of the undertaking in question is set out in defendant's answer in the Miller-Wemme case.

For the purpose of avoiding to the utmost any delay, even remotely, similar to that depicted in Dickens' novel, Bleak House, attendant upon the case of Jarndyce and Jarndyce, erroneously cited in defendant's brief as Jarndyce v. Jarndyce, this court especially noted defendant's answer in the particulars indicated, and fain would have entered judgment under the provisions of section 3, Article VII of the Constitution of Oregon, if the record had afforded any means of determining the life expectancies of the beneficiaries. An affidavit appears in the record that they are over 60

years of age. How much over is not stated. At the age of 60, the life expectancy is 14.1 years, while at 69 it is but 8.97 years: 41 C. J. 216. This wide variance rendered it impossible to justify this court in definitely fixing any amount as representing the present value of the bequests in suit. In plaintiff's brief, we are reminded of the rule, announced in *State v. Huffman*, 39 Or. 48 (63 P. 1), to the effect that in a criminal case the jury may determine the age of the defendant from his appearance. There is nothing in the record to show that either Mrs. Miller or Mrs. Karlan was personally present at the trial of this action. Neither of them is named as a witness in the transcript of testimony or bill of exceptions. Moreover, the carefully prepared, and valuable, written opinion of the learned trial judge discloses affirmatively that no consideration was given to that matter in determining the amount awarded plaintiff.

Defendant contends that the amount of the judgment, upon the matured installments above quoted, comprises the maximum amount plaintiff could recover in this case.

Plaintiff contends that the amount of the trust fund attempted to be created by the court constitutes the measure of damages subject to the principle that no recovery can be awarded in excess of the penal sum mentioned in the bond.

In our original opinion, we held that the amount of damages sustained by plaintiffs in the Miller-Wemme case, by reason of the failure of the defendants therein to carry out the terms of the decree, constitutes the maximum of plaintiff's recovery herein subject at all times to the restriction that no recovery can be had in excess of the penal sum mentioned in said undertak-

ing. These damages would amount to the value at the time of the trial of the aggregate amount of the installments of the bequests in question of which said plaintiffs were deprived, and would be deprived during their natural lives by reason of said failure to carry out the terms of said decree.

■ This is not an equitable proceeding. It is not a suit to enforce specific performance. It is an action at law wherein a trust fund can neither be created, administered nor perpetuated. Its purpose is to award a single judgment, in case plaintiff prevails, by which the damages, if any, arising from the breach of the bond may be compensated. The real parties in interest are the plaintiffs in the Miller-Wemme case and the defendant herein. The trustee appointed in the Miller-Wemme case is only a nominal plaintiff whose right to represent the real parties in interest was not challenged until defendant interposed a motion for nonsuit.

Plaintiff also urges that the penal sum named in the bond should be considered as liquidated damages. To this point plaintiff cited *Secord v. Portland Shopping News et al.,* 126 Or. 218, 223 (269 P. 228); *Star Sand Co. v. Portland,* 96 Or. 323 (189 P. 217); *Salem v. Anson,* 40 Or. 339 (67 P. 190, 56 L. R. A. 169, 91 Am. St. Rep. 485).

■ In all of these cases, the actual damages were speculative, uncertain and incapable of definite ascertainment. In such case, the presumption ordinarily is that the parties have taken that into consideration in making the contract, and have agreed upon a definite sum to be paid in case of a breach, in order to put the question beyond dispute and controversy, and to avoid the difficulty of proving actual damages.

■ Since the English Statutes 8 & 9 Wm. III c. 11, and 4 Anne c. 16, §§ 12 and 13, the penalty in a bond has not been considered the measure of damages, where the actual damages are susceptible of ascertainment.

In *Secord v. Portland Shopping News et al.*, supra, Mr. Justice ROSSMAN says:

"In determining whether any particular stipulation is to be regarded as one fixing a penalty, or whether it really liquidates the damages, the adjudicated cases present us with an abundance of rules to guide our determination. For instance, the situation must be appraised as of the time when the contract was effected, and not as it appears at some other time: *Baltimore Bridge Co. v. United R. Etc. Co.*, 125 Md. 208 (93 Atl. 420). It is well settled that in the determination of the problem the court should consider all of the circumstances which surrounded the parties, together with the ease or difficulty of measuring the breach in damages. A comparison of the size of the stipulated sum not only with the value of the subject matter of the contracts, but also of the probable consequences of the breach as they appeared when the contract was executed may be helpful: 17 C. J. Damages, § 234."

■ Applying the rule above quoted to the case at bar, we find that the case in which the undertaking in suit was given is one to enforce payment of bequests to the two plaintiffs therein of $35 each month during their natural lives. Given the exact ages of the legatees, which would enable the court or jury, by the use of duly authenticated mortality tables, to determine their life expectancies, the value of the annuities thus bequeathed is susceptible of appraisal.

To the writer it seems vacuous to hold that the present value of an annuity, payable in monthly installments during the remainder of a given person's life,

is so difficult of ascertainment where the age and general condition of such person is known, that the question ought not to be submitted to a jury.

Our statute imposing a tax upon inheritance requires the appraisers in the first instance, subject to reappraisement by the county court, to appraise annuities (§ 10-628, Oregon Code 1930) by the rules and standards of mortality and of value commonly used by actuaries' combined experience tables. Certainly such a course will not be more onerous for the court or a trial jury in the case at bar.

As the writer views it, plaintiff's contention, that the amount of the trust fund determines the amount of damages, is tantamount to saying that in an action at law for damages, because of the breach of an undertaking, such a judgment should be rendered as to enforce the terms of an administrative decree.

The writer believes that all parties, the plaintiffs Miller and Karlan, the defendants, The E. Henry Wemme Company et al., and the defendant herein, had in mind the value of the bequests to plaintiffs in said suit as the measure of defendant's liability when the bond in suit was executed. Nothing else was at stake. The method employed by the circuit court in an attempt to enforce payment of these bequests could in no sense increase or otherwise change their value.

The decree in the Miller-Wemme case not only renders judgment for the amount of the monthly installments of said bequest which had matured at the time of rendition but also requires the delivery to plaintiff, as trustee, of funds in the sum of twenty thousand dollars ($20,000) for the purpose of assuring the payment of all future installments of said

bequests. This court did not render that decree. This being a collateral attack, we have no authority to alter or modify it. We merely construe it.

Two points are stressed by defendant. The first is, that only a judgment for $1,400 was rendered in the equity suit. The second is, that the measure of damages herein is the amount of that judgment.

In considering whether the first point is tenable, necessarily, we must construe the entire decree and apply thereto the covenant in the bond in suit. Pagagraph II of the decree appoints the plaintiff herein trustee to collect and receive from The E. Henry Wemme Company the sum of $20,000 as a trust fund to be held and invested as a trust fund for the payment of the legacies of plaintiffs, etc. The covenant in the bond in suit is that defendants therein shall carry out any decree which may be given against them. To the writer the correct construction of the decree is that it is a mandate upon The E. Henry Wemme Company to pay $20,000 to the trustee therein named, the same to constitute a trust fund. It is true that there is no such direct order expressly stated; but it is hard for the writer to understand how a collection can be required of the trustee without requiring payment by the party from whom the trustee is ordered to make such collection.

We have not overlooked the fact that in paragraphs IV and V of said decree the trustee is authorized to institute an action for the money or property of The E. Henry Wemme Company; and also, if sufficient to make such trust fund is not now owned by The E. Henry Wemme Company, then the trustee is authorized to commence and prosecute any suit or action proper or necessary against any shareholder, who

became such by or through the bequest of stock made by E. Henry Wemme by his will, who received any dividend upon said shares as earnings or as a distribution of proceeds of the sale of the property or assets of The E. Henry Wemme Company, or against any person or corporation that holds or has acquired any of the property of The E. Henry Wemme Company since the probate of the will of E. Henry Wemme, with knowledge or notice of the rights of the plaintiffs in said suit as set forth in said will.

The writer construes these provisions of paragraphs IV and V of said decree as giving cumulative remedies. The remedy invoked by this action is also authorized by the final clause of said paragraph V; and it was proper for the plaintiff herein and Mrs. Miller and Mrs. Karlan to elect to pursue it: *Schmieding v. Doellner,* 13 Mo. App. 228.

■ For these reasons, we hold that the covenant in the bond was breached not only by the failure of the Wemme Company to pay said judgments but also, if the alleged insolvency of the Wemme Company had at the time of the institution of this action rendered it impossible for that company or The Overlook Land Company, or both of them, to carry out the further provisions of said decree.

As to the second point, wherein defendant herein urges that the measure of damages is restricted to the amount of the judgment rendered, we are unable to agree with defendant.

In the original opinion, we said:

" * * * in consonance with justice and fair dealing, the award should include, not only the amount due and unpaid upon said legacies at the time of the retrial, but also an amount representing the current

value of future installments, of which the legatees will be deprived by the default of The E. Henry Wemme Company in failing to carry out the terms of said decree.''

In support of this statement, we cited *Philbrook v. Burgess,* 52 Me. 271, and *Shaffer v. Lee,* 8 Barb. (N. Y.) 412.

It is now argued by defendant that the case of *Philbrook v. Burgess,* supra, has been overruled by the case of *Corson v. Dunlap,* 83 Me. 32 (21 Atl. 173, 12 L. R. A. 90).

The writer finds nothing in the later Maine case in conflict with the principle announced as applicable to the case at bar to the effect that the future installments of the bequests should be considered in determining how much the legatees lost by the failure to secure the trust fund from the Wemme Company.

It is true that the procedure followed in the later Maine case differs from that of the earlier case; but in both of them the future installments are considered.

We quote the opening paragraph and the first sentence of the second paragraph in *Corson v. Dunlap,* supra:

"The question is whether, in an action on a penal bond given in bastardy proceedings, the judgment should be for the penalty, and damages be assessed so far as they have accrued at the time of the assessment, future damages to be recovered by after-process of scire facias, or whether judgment must be given, once for all, for all the damages that will ever be sustained, both past and prospective, where the liability of the principal in the bond is by the order of court a continuing liability. We are of the opinion that the first named is the proper procedure.''

It will be seen that future damages are considered. The procedural question as to the form of the judgment

in *Corson v. Dunlap,* supra, depends upon the construction to be given to a section of the statutes of Maine: (Rev. St. 1883, ch. 82, § 32). This statute expressly provides that in an action on a bond in a penal sum, when the jury finds the condition broken, they shall estimate the plaintiffs' damages, and judgment shall be entered for the penal sum, and execution shall issue for such damages and costs.

We also quote the fourth paragraph of the opinion in *Corson v. Dunlap,* supra, wherein the Maine court, through Mr. Chief Justice Peters, discusses the provisions of the Maine statute above quoted. This learned jurist says:

"This provision applies to actions on bonds containing a penal clause, where there may be breaches of the bond at different times. The portion of the section which requires a judgment for the penalty does not apply to a bond conditioned to pay a single sum on a day certain, because in such case there can be but one breach and one assessment, and no necessity exists for retaining the penalty as a security for future breaches; but, even in such case, a judgment for the penalty would not be injurious to any party, and such (merely inaccurate) judgments are to be seen occasionally on our records."

The English Statutes 8 and 9 Wm. III c. 11, § 8, prescribes a similar procedure, namely, in actions upon bonds where future breaches may occur, judgment for the penalty and an assessment for damages for breaches up to the time of the trial should be entered, the unpaid portion of the judgment for the penalty to remain as security for damages because of future breaches which are to be recovered by scire facias as such future breaches occur. Many other authorities submitted by defendant hold that where future breaches of a bond may occur, the judgment entered should be in the penal sum with the

right to have execution issue for damages assessed at the time of entry, and the further right to successive assessments of damages upon scire facias as successive future breaches occur with the right to the issuance of executions for the damages so assessed, the unpaid part of the judgment for the penal sum of the bond to remain as security for future breaches. In view of the doctrine of these cases, it is hard for the writer to follow defendant in his contention that the future installments of the bequests in suit should not be considered in determining how much these claimants were damaged by the breach of the indemnity bond in suit.

The distinction between those cases and the one at bar is obvious. In the case at bar there can be no future breach. The breach assigned in the case at bar is the insolvency of the Wemme Company and its inability, failure and refusal to pay to the plaintiff, as trustee, the amount of the proposed trust fund. The covenant of defendant herein is that said Wemme Company shall carry out the decree in the equity court. That decree required the Wemme Company to pay to the trustee twenty thousand dollars ($20,000) as a trust fund. The failure to pay that sum constitutes the breach of the bond in suit. No subsequent breach could be assigned.

To the writer it is clear that the amount of damages sustained by the plaintiffs in the equity suit, by reason of the failure by the Wemme Company to carry out the terms of the decree in that suit, is the difference between the value of their bequests, if the decree had been carried out, that is, the judgments therein awarded had been paid, and the trust fund therein decreed had been placed in the hands of the trustee as therein ordered, and the value of those be-

quests without any such payment and without any such security. In determining the value of the bequests, the future installments should be considered.

Plaintiff herein asserts that the original opinion herein reviews and annuls a decree of the circuit court of Multnomah county, rendered by Judge Morrow, at the instance of a surety upon a judicial undertaking contrary to the rule of res judicata. There is not one word of annulment in the original opinion.

The authorities, cited by plaintiff upon this point, are not applicable. In all of those authorities, there had been an adjudication upon a given issue and later an attempt to relitigate that issue. In the case at bar, there has not yet been a determination of the amount of damages Mrs. Miller and Mrs. Karlan will suffer by reason of the breach of the covenant in the bond in suit. There is nothing in the decree in the suit in equity fixing the amount of damages to be recovered by plaintiffs in that suit in case of the failure of the Wemme Company to comply with the decree.

Plaintiff cites many authorities to the effect that a judgment on an indemnity bond or contract against the principal is either conclusive or prima facie evidence of the liability of the surety.

The first of these citations is section 159, Herman on Estoppel and Res Judicata. This section quotes Mr. Chief Justice Shaw in *City of Lowell v. Parker et al.,* 10 Met. (Mass.) 309 (43 Am. Dec. 436), as follows:

"When one is responsible, by force of law or by contract, for the faithful performance of the duty of another, a judgment against that other for the failure of the performance of such duty, if not conclusive, is prima facie evidence, in a suit against the party so responsible for that other."

There, the defendant was surety on a bond given by one Parker for the faithful performance of the duties of constable. Parker took the goods of one Bean on attachment process. Bean procured judgment against Parker for $90 damages. Pursuant to the approved practice in that jurisdiction the case cited was instituted by the city of Lowell for and on behalf of Bean to recover damages from Parker and his sureties upon said official bond. The court held that the judgment formerly obtained by Bean was competent.

We quote from that case:

"It is perhaps unnecessary, in the present case, to decide whether, to any extent or for any purpose, the judgment against Parker was conclusive upon the sureties. It purports to prove nothing more than that the defendant Parker unlawfully took certain goods of the plaintiff. Whether he was an officer, or whether he took them by color of office, it does not purport to decide. All that, therefore, is left to evidence aliunde. If it appears by such evidence that any of the property was taken by color of office, as it no doubt does upon the evidence reported, that shows an official misfeasance, which is a breach of the bond, and entitles the plaintiff to judgment as for such breach. But when it comes to the assessment of damages, and it is open to question, whether the trespass for which judgment was recovered in the action of trespass was done by color of office, it will no doubt be competent to the court or jury, who assess the damages, to ascertain what portion of the property was so taken; for it is that part only which is in question in this suit. And if it turns out, as the evidence at present shows, that a part of the property for which judgment was rendered was not taken by Parker by color of his office, and does not appear as such, either on his return or on the certified schedule given to the plaintiff, then as the damages were entire, the question of damages must be opened anew.

"In regard to the evidence offered by the defendants, to prove that the goods had been mortgaged by a previous owner, before they were attached, that such mortgage was outstanding and in force, that the mortgagee demanded them, that Parker delivered them, it was in effect to prove a paramount title in another, to which the defendant, on demand made, rightfully yielded. If this was offered as evidence to show a defense to the action, we think it was rightfully rejected. * * *

"But when the question of damages arises, upon a hearing in equity, we are inclined to the opinion that the evidence would be admissible in reduction of damages. *Squire v. Hollenback,* 9 Pick. 551. It would show that he whose goods were taken out of his possession had only a naked possession and right to redeem, an interest much less in amount than an unincumbered and absolute title, and therefore that he has lost less than if he had had such absolute title."

Clearly, this authority, upon which section 159 of Herman on Estoppel and Res Adjudicata is based, holds, that, notwithstanding a judgment has been entered in a given sum against a principal upon a bond, which judgment establishes a breach of said bond, nevertheless the surety thereupon shall be held liable for no greater part of that judgment than in such a sum as to recompense the obligee for the loss sustained.

In the case at bar, the decree in the suit in equity does not establish any breach of the bond in suit, it merely defines the duty of the Wemme Company; as doubtless the statute defined the constable's duty in the case last discussed.

Section 160, id., announces the doctrine that:

"When * * * the default of his principal is the main fact adjudicated in an action against him, and it is judicially determined that his principal has com-

mitted a breach, *and the amount of damages the party has sustained,* that determination fixes the liability and extent thereof, not only as against the principal, but as to the sureties.''

Section 176 of Stearns on Suretyship is also cited by plaintiff. The doctrine there promulgated is that when a competent judicial tribunal has determined the fact that there has been a breach of official duty, such fact should be considered as established against the surety until he meets the issue by competent proof showing the contrary; that two judgments finding the same fact should not be required except where the surety specifically elects to try the matter anew.

This section is not in point, because, in the case at bar, while the decree in the suit in equity declares the duty to be performed by the Wemme Company, it nowhere declares that such duty has not been performed; and of course it is silent as to the measure of damages in case of such nonperformance.

We must bear in mind that we are confining our consideration to the effect of that part of the decree attempting to create a trust fund from the Wemme Company's assets. We do not, nor does defendant now dispute the effect as res judicata of the judgment in said decree for the matured installments of the bequests.

Plaintiff cites section 65, Pingrey on Suretyship and Guaranty. This section refers, by footnote, to the case of *Stovall v. Banks,* 10 Wall. (U. S.) 583 (19 L. Ed. 1036), in which case the trial court rejected the record of a decree establishing the fact that an administrator had funds in his hands belonging to the estate of his decedent and directing the distribution thereof among the distributees for whose benefit the principal case

was instituted against the surety on said administrator's bond. The holding is that the decree aforesaid together with the return of nulla bona upon execution against the administrator was admissible in evidence as showing a breach of the bond. The covenant in this bond was that the administrator would faithfully discharge his duty as administrator. The respective amounts ordered paid to the distributees respectively certainly would constitute the proper measure of damages, because those amounts represent the loss which the respective distributees would suffer by the nonfeasance of the administrator.

*Shepard v. Pebbles,* 38 Wis. 373, is also mentioned in support of said section 65 of Pingrey on Suretyship and Guaranty. This is an action to compel contribution by one surety to another paid on a bond given by a guardian on the sale of real estate belonging to his ward. The amount of the guardian's liability to the ward was established on an accounting before the county court. An action was subsequently commenced on the bond against the guardian and the plaintiff in the principal suit. In that action, judgment was rendered against them. In the action to compel contribution, the court held that the sureties were estopped from questioning the correctness of the amount ordered by the county court to be paid by the guardian to the ward. This amount represents the loss which the ward would sustain by the breach of the bond.

*Meyer v. Barth,* 97 Wis. 352 (72 N. W. 748, 65 Am. St. Rep. 124), also cited, is an action against sureties upon a bond given by the trustee of a testamentary trust. The trustee failed to account for the property in his hands as such trustee. The court determined the amount for which he had failed so to account and

ordered him to pay it to his successor. This was held to be res adjudicata as to the defaulting trustee's sureties.

*Riddle v. Baker,* 13 Cal. 295, is a suit to review a judgment rendered in the case of *Baker v. Bartol,* 7 Cal. 551. In the latter case, sureties on a common law bond were held in the amount of the bond because of the failure of a trustee to pay the amount awarded by the decree. The sureties covenanted that one Bartol would account for certain trust funds. He failed to so account. Judgment against the sureties was taken on the bond. Later, an attempt to impeach such judgment was denied.

■ We have carefully read all the authorities cited and find none that changes the principle that "compensation is the guiding rule in damages": *Mohawk Co. v. Bankers Surety Company,* 162 Wis. 272 (156 N. W. 154).

We return to the question: What is the measure of damages in this action? The plaintiff says that it is $10,000. The reason plaintiff assigns in support of that answer is, that in the equity suit the trustee was authorized to collect $20,000 from The E. Henry Wemme Company, and, hence, that part of $20,000, which is not in excess of the penal sum of the bond is the measure of damages. Plaintiff also urges that, at all events, the penal sum named in the bond constitutes the measure of damages.

To the writer, plaintiff's first position in that regard presupposes that the amount of the trust fund, if large, would of itself render the measure of damages correspondingly large, while in actuality it could not have that effect. If a trust fund of ten million dollars had been actually created, the plaintiffs in the equity suit would receive only the bequests provided in the will. If no trust fund whatever materializes,

they are deprived only of the bequests. As to plaintiff's second position, the present value of these bequests is not of such difficult ascertainment as to require recourse to the penal sum as liquidated damages.

The defendant answers the question, what is the measure of damages, by saying, the amount of the judgment of $1,400 entered in the equity suit. This answer assumes that the covenant in the bond is merely to pay a judgment, but that is not the case. The covenant defendant made with the plaintiffs in the equity suit is, that the defendant in that suit would carry out the decree, the decree was of such a nature that, if carried out, plaintiffs in the suit would receive the installments of their bequests, not alone the installments which were overdue when the suit was instituted and for which judgment was entered; but, also, the future installments. Nothing appears in the record tending to indicate that those plaintiffs would receive anything except the amount recoverable on the bond in suit. At least no issue was joined or testimony adduced from which it could be considered that the damages for the breach of the bond had been or could be minimized.

■ The writer is unable to follow plaintiff in its assertion that, if upon retrial of this action at law, a jury is empaneled, then, the whole question of the amount of the trust fund would necessarily be submitted to a jury. The questions to be submitted would depend upon the state of the pleadings and the proof at the time of the retrial. In their present state, there are but two questions of fact presented, and those are as to the alleged insolvency of The E. Henry Wemme Company, and as to the amount or value at the time of the retrial of the bequests to Hattie E. Miller and Mamie Karlan maturing and to mature subsequently to November, 1928.

As to the recovery of an attorney's fee from the defendant herein, the writer is of the opinion that the only possible basis therefor rests upon a statutory provision conditioned upon failure to pay the loss upon the expiration of six months from the filing of proof of loss. This condition should be given the same consideration that it would receive if found in a written contract of insurance. That being so, in a case where no proof of loss has been made, some ground of waiver or estoppel should be pleaded in the complaint, and, in case issue is joined thereon, some testimony should be introduced in support thereof. The only suggestion of such a pleading in this case is a paper denominated supplemental complaint. Bearing in mind, that the original complaint was filed on April 4, 1929, it is difficult for the writer to understand how this document could be considered a supplemental complaint.

A supplemental complaint is a complaint filed by the plaintiff subsequently to the filing of the original complaint to bring forward facts that have transpired since the institution of the suit, which may tend to strengthen or reenforce the cause of action: Ballentine's Law Dict. p. 1253.

In this document, whatever its proper name may be, it is alleged: "That demand of the sum of $10,000 upon the undertaking alleged in the complaint executed by the defendant was made upon the defendant prior to January 1, 1929." How long prior to the date mentioned, this alleged demand was made, is not stated. The demand of $10,000 would not constitute waiver of proof of loss, if only a less amount was due, or if the demand was made before any liability whatever had accrued.

It is also alleged: "The defendant failed and refused to pay said sum of $10,000 or any part thereof."

It is not stated when this alleged failure and refusal occurred. Under these allegations, both the alleged demand and the alleged failure to pay may have occurred at a time when the defendant was under no obligation to pay.

It is not alleged that there was any demand for the payment of the value of the bequests mentioned, nor that since the same have been decreed to be a charge against The E. Henry Wemme Company, the plaintiff offered to make proof of loss, or that defendant did anything or failed to do anything constituting a waiver of proof of loss. There is of record, however, a motion by plaintiff, filed November 5, 1929, wherein "Plaintiff expressly waives any claim for judgment for attorney's fees." There is no allegation of any fact relieving plaintiff from the effect of this express waiver.

■ With reference to the recovery by plaintiff for expenses of the trustee, we hold that there is neither averment nor proof upon which such recovery could be had in the present state of the record. By appropriate averment, supported by requisite proof, expenses, when reasonable in amount and necessarily incurred by the real parties in interest, because of the default of a surety of its principal in an honest effort to minimize damages, are deemed to be recoverable as special damages. We have no circumstances, either in the pleadings or in the proof by which we are able to decide whether or not the expenses thus mentioned by plaintiff come within this principle.

■ At common law, there were originally three kinds of bonds, a simple bond, a penal bond conditioned for the payment of money, and a penal bond conditioned that a collateral thing would be done. The bond in suit belongs to the third class.

■ Under the English Statute, above named, enacted in 1697, (St. 8 & 9 Wm. III, c. 11.) in an action to recover because of a breach of such a bond, the practice was to enter a judgment for the whole penalty, restricting the right of execution thereon to the amount of damages assessed, with a further right to execution upon sicre facias for damages thereafter accruing because of subsequent breaches. That procedure has not been followed in Oregon. No good reason can be given for declaring its adoption now. Assessments of damages for subsequent breaches may be had as easily by successive action as by scire facias, and, to the writer, such procedure is more in harmony with the provisions of our statute than the procedure prescribed in the old English statute. It has been held that this English statute does not prevent repeated actions on a bond for recurring breaches thereof: *Orendorff, Admr., v. Utz,* 48 Md. 298. Under the English statute, enacted in 1705 (St. 4 Anne ch. XVI, secs. 12 and 13,) judgment was entered for the penalty, but payment of the actual amount due upon the bond with interest and cost entitled defendant to a discharge. Under the Missouri statute, entry of judgment for the penal sum was held to be only a matter of form: *Burnside v. Wand,* 108 Mo. App. 539 (84 S. W. 995).

Many states in this country have adopted a similar procedure. Oregon has not. It is the opinion of the writer that our code has substituted actions at law for writs of scire facias as a means of successive recoveries upon bonds. To support either remedy, there must be successive breaches. In the case at bar, there is but one breach, hence, there can be but one recovery.

Reversed and remanded.