Argued and submitted June 26, affirmed November 9, 1981

CARTER,
*Appellant,*

*v.*

WOLF CREEK HIGHWAY WATER
DISTRICT,
*Respondent.*

(No. 37-728, CA 18377)

635 P2d 1036

Glen Shearer, Portland, argued the cause for appellant. With him on the briefs was Schouboe, Marvin & Furniss, P.C., Portland.

Jeffrey M. Batchelor, Hillsboro, argued the cause for respondent. With him on the brief were Schwenn, Bradley, Batchelor & Brisbee, Portland, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

**THORNTON, J.**

Plaintiff appeals from a jury verdict entered in favor of defendant Wolf Creek Highway Water District (District), on District's counterclaim. Plaintiff assigns as error the trial court's denial of plaintiff's motion for directed verdict upon the District's counterclaim.

The essential facts are as follows. Plaintiff provided engineering services on projects for defendant over a period of years from 1960 to 1976. One such project involved engineering services relating to .the design and construction of the Schell Reservoir. The District directed plaintiff to prepare plans and specifications for the Schell project.

The Schell Reservoir water storage tank was completed in 1975; however, water could not be drained from the tank. There is a dispute in the testimony as to exactly what water distribution system plaintiff promised defendant, but the jury could reasonably infer that the Schell Reservoir, as built per plaintiff's design, was intended by the parties to operate and carry water to and from the tank.

When the parties discovered that the tank would not drain, plaintiff suggested an alternative distribution line which would be built to carry water from the tank over what was known as the Coe-Muessig property. Since the District did not have an easement across the Coe-Muessig property, plaintiff set out to obtain one and prepared plans for construction of the additional distribution line. The District later lost confidence in plaintiff and terminated his services in 1976, thus abandoning the alternative Coe-Muessig line. Instead, the District hired another engineer who designed a system that allowed water to enter the Schell Reservoir tank through the line plaintiff had designed and to be removed from the tank through another line laid parallel to the first. The new line was completed in 1979 and operated properly.

Plaintiff brought the present action for $33,355.43 in fees for several projects occurring in the years 1973 through 1976. Included in plaintiff's complaint was a claim for $750 expended in the acquisition of the Coe-Muessig

easement and for planning the proposed alternate distribution line. The District counterclaimed for $292,000 as the additional costs it allegedly incurred in construction of a new line, contending that plaintiff was negligent in the design and preparation for construction of the Schell Reservoir when plaintiff knew, or should have known, that the reservoir would not function.

The jury awarded plaintiff $1,020.84 for fees owed plaintiff on his claim and awarded defendant $10,000 on his counterclaim.

Plaintiff argues first that a directed verdict upon defendant's counterclaim should have been granted because defendant failed to prove it had incurred any damages as a result of plaintiff's actions. He maintains that the cost of the distribution line would have been paid by defendant regardless of plaintiff's actions, citing *Pacific Form Corp. v. Burgstahler,* 263 Or 266, 272, 501 P2d 308 (1972). In other words, plaintiff contends that he never promised to build an operating distribution line in the first place and should not be required to compensate defendant for the distribution line it subsequently constructed.

■ There was evidence presented that the parties intended that the Schell Reservoir project would operate properly upon completion according to plaintiff's plans and specifications. Thus, there was evidence from which a jury could find that the District was damaged when it incurred additional costs in constructing a new distribution line. Reasonable minds could differ as to the issue of the District's damages, and a directed verdict on this ground was properly denied. *Resser v. Boise-Cascade Corporation,* 284 Or 385, 389, 587 P2d 80 (1978).

■ Plaintiff next argues that a directed verdict should have been granted on defendant's counterclaim, because defendant failed to introduce any competent evidence of the amount of its damages. There was testimony introduced concerning the District's added costs in modifying plaintiff's original distribution line and in constructing a new distribution line to make the reservoir operate properly. The evidence concerned the cost per foot of the water distribution line.

■ ■   The goal of a damage remedy in cases such as this is that of compensation. *Title & Trust Co. v. U.S. Fid. & Guar. Co.,* 138 Or 467, 500, 1 P2d 1100, 7 P2d 805 (1932). This general principle is true regardless of whether the claim is couched in terms of tort or contract. Here the cost of replacement or repair of the distribution line was a proper measure of damage. *Beik v. American Plaza Co.,* 280 Or 547, 572 P2d 305 (1977). Since evidence was introduced on the issue of replacement and repairs, a directed verdict based on lack of evidence as to the measure of damages was properly denied. *Resser v. Boise Cascade Corporation, supra.*

■   Lastly, plaintiff argues that a directed verdict on defendant's counterclaim should have been granted, because the counterclaim was time barred by the statute of limitations. The applicable statute of limitations on the District's counterclaim was two years.[1] The District claimed that it did not become aware of the failure of the Schell Reservoir to operate until sometime after June 15, 1975. It did not, however, file its counterclaim until March 15, 1979. At first blush then, this would indicate that

---

[1] Contrary to the assumption made by the parties at trial and on appeal, we conclude that the applicable statute of limitations is not ORS 12.135(1), but ORS 12.110, although both are two year statutes of limitation. The Oregon Supreme Court recently addressed the application of ORS 12.135(1) in *Securities-Intermountain v. Sunset Fuel,* 289 Or 243, 611 P2d 1158 (1980). There the court found that ORS 12.135(1) applies only to "personal injuries," *i.e.,* bodily injuries and physical damage to existing tangible property. 289 Or at 251. Defendant's counterclaim in the case at bar did not allege any such personal injury or injury to tangible property. *See Beveridge v. King,* 50 Or App 585, 588, 623 P2d 1132 (1981). Rather, it alleged that plaintiff was negligent in performing his professional services, causing defendant to incur the added cost of satisfactory completion.

We also note, although not advanced by defendant, that the six year statute of limitations for actions "upon a contract," ORS 12.080(1), is not applicable here. Defendant's only reference in its counterclaim to any contract between the parties came in the allegations that defendant "retained" and "engaged" plaintiff to perform services in consideration of 6% of the total construction costs. This reference to the parties' agreement was a matter of inducement and not the contractual relationship which gives rise to defendant's cause of action. *See Lindemeier v. Walker,* 272 Or 682, 538 P2d 1266 (1975); *Bales for Food v. Poole,* 246 Or 253, 424 P2d 892 (1967). The counterclaim did not allege breach of any contract, nor did it refer to any contract to establish or detail the obligations of plaintiff as the basis for recovery as was present in *Sunset Fuel, supra.* Rather, the counterclaim alleged a breach of a general standard of skill and care to which plaintiff would be bound independent of the contract. *See Villalobos v. University of Oregon,* 47 Or App 103, 107, 614 P2d 107, *rev den* 289 Or 903 (1980). Thus, the counterclaim framed a claim in tort and is governed by ORS 12.110.

defendant's counterclaim was not timely filed. However, the jury found (a) that plaintiff's claim for fees included a sum for obtaining easements necessary for rectifying problems incident to the Schell Reservoir, and (b) that the District did not know of the defects in the Reservoir until after June 15, 1975.

We conclude that because the easements were sought to cure the defect in the original design of the Schell Reservoir project, the counterclaim for additional costs in constructing a new distribution line relates back to the filing of plaintiff's original claim on June 15, 1977. For this reason, the District's counterclaim was thus filed within two years of the discovery of the injury, namely sometime after June 15, 1975. *See Lewis v. Merrill,* 228 Or 541, 549, 365 P2d 1052 (1961).

There was evidence presented which would support the District's contention that the $750 fee claimed by plaintiff related to the counterclaim and that the counterclaim was filed within two years of the discovered injury because it related back to the filing of plaintiff's claim. Therefore, the directed verdict on this ground was properly denied.

Affirmed.