## Bankers Surety Co. v. Jefferson Realty Co.

(Decided May 9, 1911.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, Second Division).

1. Master and Servant—Safe Place to Work—Dangerous Premises —The law imposes upon the employer the duty to furnish his employe a reasonable safe place in which to work, and he may not relieve himself of this responsibility by showing that others than himself are responsible for the dangerous condition of the premises.

2. Fellow Servants—Liability to each other for Negligence—The opening into which the employe, Craig, fell, was being used by Probst and he, Probst, negligently left it open and unguarded. But for this negligence the injury to Craig would not have happened. This was not only the act of Probst, but a very negligent one, and one against which he contracted to hold the appellee Realty Company harmless.

HELM BRUCE and BRUCE & BULLITT for appellant.

DAVID W. BAIRD, KOHN BAIRD, SLOSS & KOHN and W. W. WATTS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Jefferson Realty Company entered into a contract with Herman Probst, an independent contractor, by which he agreed to erect the building on Fourth street, in Louisville, Kentucky, known as the Paul Jones Building. The contract, among other things, provided that he would furnish:

"All materials and perform all the work for the erection, construction and completion of excavation, common concrete, armored concrete, brick masonry, cut stone work, tile partitions, sheet metal and roofing, structural steel and cast iron, ornamental steel and cast iron, carpenter and wood interior finish, plumbing, interior marble slate and mosaic work, plastering and painting * * * as shown on the drawings and described in the plans and specifications prepared by Frank M. Andrews, architect."

The contract further provides:

"Said contractor agrees to protect and save harmless the owners from any loss, cost or damage to them on account of any damage or injury to third persons, or to property, occasioned by the acts of said contractor, his servants, agents, employes, or any sub-contractors, or his servants, agents or employes."

Under the contract it was stipulated that the building should be completed within 10 1-2 months from November 8, 1905, and for failure to comply with this provision the contractor agreed to pay as a penalty liquidated damages at the rate of $200 per day for each day in excess of 10 1-2 months required by him to complete the building. The contract price was $309,954, to be paid in installments upon estimates made by the architect as the work progressed. Ten per cent. of these estimates was to be reserved until the contract was completed. The contract also contained a provision protecting the owner against damage to third persons and liens of materialmen and mechanics. For the faithful performance of his contract according to its terms the contractor executed a bond in the sum of $155,000 with the Bankers Surety Company as surety.

The contract was not completed within the time limit. It was charged that the work was not done according to contract, and a dispute arose between Probst and the owners as to the balance due him; many sub-contractors who had not been paid filed mechanics liens against the property; several suits had been brought against the Jefferson Realty Company and Probst for damages growing out of alleged negligent acts on the part of Probst in the conduct of the work, and still others were threatened. With their affairs in this condition, representatives of the Jefferson Realty Company, Probst, and the Surety Company, undertook

to adjust and compromise their differences. The sub-contractors were claiming something like $52,000, Probst was claiming a balance of $63,000, while the Realty Company claimed that they owed only $43,000, which was subject to a reduction on account of counterclaim, amounting to $14,000, and liquidated damages for failure to complete the building within the required time amounting to $17,000; so that the Realty Company was in fact admitting an indebtedness to Probst of but $12,-000, in round numbers. The negotiations looking to a compromise, settlement and adjustment of their differences were carried on through a period of eighteen months. Every phase of the questions in dispute was considered and discussed. Propositions and counter-propositions were made from time to time, until finally, on June 18, 1909, the following compromise agreement and settlement was entered into between them:

"This agreement, between the Jefferson Realty Company hereinafter referred to as the Realty Company, and Herman Probst, witnesseth as follows:

"There has been a controversy between said parties as to their mutual rights and liabilities growing out of the construction of the Paul Jones Building in the city of Louisville, Kentucky, which has been compromised as herein shown.

"The amount due said Probst from the said Realty Company, on the face of the accounts, without reference to claims for damages, in $43,205.91. It has been agreed that there shall be deducted from this amount the sum of $7,250 in full settlement and satisfaction of all claims which said Realty Company has against said Probst for damages, except as hereafter stated, thus leaving due said Probst from the said Realty Company the sum of $35,955.91.

"2. Said Probst will proceed to reduce his indebtedness to his sub-contractors until it reaches said sum of $35,955.91 or less, and, as provided in the contract be-tween the said Realty Company and Probst, will furnish satisfactory evidence to the said Realty Company that he has so reduced said indebtedness. Thereupon said realty company will honor and pay drafts upon it by said Probst in favor of the remaining unpaid sub-contractors in all not exceeding the sum of $35,955.91, until all of them are paid in full; and if then there be any balance of said sum remaining, the said realty company will pay

same to said Probst, upon production of satisfactory evidence that all of said sub-contractors have been paid.

"3. Said Probst will give a bond with a good and solvent surety company as surety to save said realty company harmless against any damage to which, within the period of two years from June 1, 1908, said realty company may be subjected because of any defects in the plumbing, and to refund to it any costs to which, within said period, it may be subjected in repairing such defects.

"4. Said Probst will give a bond with some good and solvent surety company as surety to save said realty company harmless against any cost or damage which may be adjudged against it in any of the suits by the Louisville Gas Company, Galvin & Fox, Tischendorf-Chreste Lumber Company, E. N. Button, Geo. W. Hinesley, Thos. Craig, Claud Rickets, Sallie Johnson, Elizabeth Lytle and Joseph Grider, or others, now pending, or that may hereafter be brought against it, seeking to recover against it for any matter which said Probst indemnified it against in the said building contract between them; and he will defend such suits at his cost.

"5. The litigation in the suit of Grainger & Company v. Jefferson Realty Company, and others, including Probst, shall continue as to any claims which said Probst desires to contest; but he will save the realty company harmless from any costs or judgment in that suit, except such as have heretofore been paid by the said realty company. Said realty company makes no claim against said Probst for such costs as it has already paid.

"6. This agreement does not release the Bankers Surety Company on the aforesaid building contract, and the bonds proposed to be executed are additional to its security as surety therein.

"7. There is a claim by said Probst against said realty company of about $578 for the work of removing certain debris from the ground upon which the Paul Jones Building was erected, being work done by said Probst, which Galvin & Fox had originally contracted with the said realty company to do. Galvin & Fox are also making a claim against the said realty company for compensation on account of this work. And this compromise does not affect the claim of Probst on account of the work mentioned in this paragraph. That remains open for subsequent adjustment in the suit of

Galvin & Fox v. Jefferson Realty Company, No. 45683, pending in the Jefferson Circuit Court. The Jefferson Realty Company shall be acquitted on paying said sum as the court determines in that action.

"JEFFERSON REALTY COMPANY,
"By W. W. WATTS, Atty.
"HERMAN PROBST,
"By HELM BRUCE, Atty.

"The Bankers Surety Company subscribes its signature hereto in token of its consent to the foregoing agreement, as surety for Herman Probst on the building contract referred to.

"THE BANKERS SURETY COMPANY,
"P. W. HARVEY, President.
"Attest: M. A. CRAIG,
"Secretary."

The bond provided for in said compromise agreement was upon the same date executed by said Probst, with the Bankers Surety Company as surety. This bond is as follows:

"Herman Probst, as principal, and the Bankers Surety Company, as surety, do hereby agree with the Jefferson Realty Company that they will save it harmless against any damage to which, within the period of two years from June 1, 1908, said Jefferson Realty Company may be subjected, because of any defects in the plumbing in the Paul Jones Building in the city of Louisville, Kentucky, installed by said Herman Probst, so far as such defects may be due to any default of said Herman Probst or his sub-contractors and to refund to it any costs to which, within said period, it may be subjected in repairing such defects, provided the liability hereunder for defects in plumbing shall not exceed the sum of $5,000 and will further save said Jefferson Realty Company harmless against any cost or damage which may be adjudged against it in any of the suits of the Louisville Gas Company, Galvin & Fox, Tischendorf-Chreste Lumber Company, E. N. Button, George W. Hinesley, Thos. Claig, Claud Rickets, Sallie Johnson, Elizabeth Lytle and Joseph Grider, or others, now pending or that may hereafter be brought against it, seeking to recover against it for any negligence on the part of said Probst which he indemnified it against in the contract between said Probst and the said Jefferson Realty Company for

the construction of the Paul Jones Building in the city of Louisville, Kentucky.

"Witness the signature of the parties, this the 18th day of January, 1909."

The Jefferson Realty Company had, on April 28, 1909, paid in satisfaction of the Craig suit $2,250, on the 17th of June, 1909, in satisfaction of the Hinesley suit, $3,170.05, and thereafter, on the 12th of August, 1909, in settlement of the costs in the Grider suit, it paid $62.08. These several sums, with interest thereon from the date of their payment, were demanded by the realty company of Probst and the surety company, and, upon payment being refused, this suit was instituted.

The petition set forth the facts. The answer admitted the execution of the compromise agreement and the bond as above set out, but denied that Probst was answerable or chargeable with any negligence in the acts out of which these several suits grew. The affirmative matter in the answer was traversed. By agreement of parties the case was submitted to the court for judgment upon the law and facts without the intervention of a jury. Having heard the evidence, the court, in a separate finding of law and facts, adjudged the plaintiff entitled to the relief sought. From that judgment this appeal is prosecuted.

There are practically no disputed questions of fact and the validity of the judgment appealed from is made to turn upon the correctness of the court's construction of Probst's contract. This contract expressly obligated the contractor to hold the owners of the property harmless on account of loss caused or damage occasioned to third persons or property by the acts of the contractor or his employes. It does not say that he will hold them harmless for acts of negligence for which he alone is responsible, but for any and all acts of his and his employes that result in damage to third persons or property. By this obligation his rights are to be determined. We consider the cases separately.

The Hinesley case was a suit for damage to the property of an adjoining owner occasioned by blasting for the foundation of the Paul Jones Building. Probst, et al. v. Hinesley, 133 Ky., 64. This blasting was done by Probst, or others under him, and by the plain letter of his contract he is chargeable with any damage that resulted therefrom. But it is insisted for him that he

should not be held responsible for the reason that Andrews, the architect, directed him to use blasting in preparing for the foundation. Andrews was the draughtsman of the plans for the building, and the contract provided that the work should be done under his supervision, and that his decision as to the true meaning of drawings and specifications should be final. The contract also provided that the architect should furnish such additional drawings and explanations as might be necessary to detail and illustrate the work to be done. This language is certainly broad enough to authorize the architect to advise and tell the contractor how the specifications contemplated the work should be done, and as this is all he did he was but discharging the duty which the contract clearly authorized. But if this were not so it can not be said from the record in that case that if the blasting had been carefully and properly done, injury would have resulted to the adjacent or adjoining property. The question of the negligence of appellee and Probst as well was submitted to the jury, and the jury found that Probst was negligent, and his negligence must have been confined to the manner in which the work was done. True, the jury found that appellee was likewise answerable for the damage, but its liability consisted, not in the doing of any act, but in the prosecution of a work that was necessarily hazardous and dangerous. As to third parties the owners could not contract against their liability on account of the blasting because of the known inherently dangerous qualities of the explosives used in the blasting; but they had a perfect right to provide against their liabilities so far as the contractor was concerned, and this they did in obligating him to hold them harmless on account of injury to third persons or property by reason of any act of his or his employes, etc. This claim clearly falls within the letter of the contract, and the chancellor correctly so held.

The Grider case involves only a matter of costs, as the claim for damages was defeated. Grider v. Jefferson Realty Co., 116 S. W., 691. But inasmuch as appellee was put to expense on account of a claim based upon an act of Probst supposed to be negligent, although not shown to be so, appellant is answerable both under the original contract and by the terms of the compromise agreement, which expressly undertakes to hold appellee harmless on account of cost or damage, etc., growing out

of certain named suits, and this is one of them. Many of these suits referred to in the compromise agreement had been tried out in the lower court, and some of them in this court, and the parties knew that, although Probst might be successful in some of them, there would necessarily be costs incurred in defending them, and hence the ageement to hold appellee harmless on account of cost or damage because thereof.

In the Craig case Probst was not sued, but it is alleged, and the proof supports the charge, that the proximate cause of the injury out of which the litigation grew was the negligence of Probst in leaving an opening into the basement of the building which he was then using open and unguarded. There were two of these openings near each other. One was used by Probst and the other by appellee. Craig, an employe of appellee's, was engaged in taking ashes out of one of these openings and fell into the other, which had been left open and unguarded by Probst. Craig sued his employer and rested his right to recover upon the ground that he was not provided with a reasonably safe place in which to work. He charged that the opening should have been protected by a guard rail. Appellee pleaded, among other things, that the shaft had been left open by Probst, the independent contractor, and that he, if any one, was answerable for the injury. On demurrer this plea was held bad, on the theory that the law imposes upon the employer the duty to furnish his employe a reasonably safe place in which to work, and he may not relieve himself of this responsibility by showing that others than himself are responsible for the dangerous condition of the premises. While it was no defense to the suit against the appellee by Craig that Probst had left the shaft open, it is most earnestly insisted that Probst is liable under his contract for the money which appellee was compelled to pay in satisfaction of this claim. Suppose, instead of an employe of appellee, Craig had been a pedestrian and had fallen into the opening, and sued appellee and Probst, or Probst alone, can there be any doubt but that Probst would have been adjudged guilty of negligence in leaving such an opening in the pavement unguarded? We think not. The fact that appellee alone was sued does not alter the facts in any wise. The opening into which Craig fell was being used by Probst, and he negligently left it open and unguarded. But for this negligent act

on his part the injury could not have happened. This was not only the act of Probst, but a very negligent one, and one against which he contracted to hold appellee harmless.

As to the Craig and Grider cases there can be no doubt, but that they come clearly within the letter of the contract, and the Hinesley case, if not within the letter, comes within its spirit and was evidently regarded by the parties, when the compromise was made, as covered by and within the protection of the bond. Probst understood, when he made the original contract, that he might have to use explosives in making the excavation for the foundation, and that their use is always attended with more or less danger, and when, with this knowledge, he contracted to hold the owners harmless because of injury or damage to third persons or property by any act of his, it would be manifestly unjust to hold that under this contract Probst obligated himself for such damage as might result only in that class of cases where the owners had the right in law to contract against their liability. Such is not the fair intent and meaning of the contract. His obligation was to hold them harmless on account of any damage, etc., resulting to third persons from any act of his. He did not contemplate, nor did the owner, that they were assuming liability for injury that might result to third persons by reason of work done by Probst in making the excavations for the foundation. The object of the owners in taking the bond was to protect themselves against any injury or damage that might result by reason of the doing of this work. They could not relieve themselves of liability to third persons, and hence they wanted some protection in the event such injury did result by reason of the work. The bond was intended to afford this protection. To hold otherwise would be to defeat the very purpose of its execution.

Judgment affirmed.