Argued September 7; reversed October 13, 1943

# UNITED STATES FIDELITY & GUARANTY CO. ET AL. *v.* THOMLINSON-ARKWRIGHT CO. ET AL.

(141 P. (2d) 817)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*David Sandeberg,* of Portland, (Sheppard & Phillips, of Portland, on the brief) for appellants.

*John Lichty,* of Portland (Robert Clapperton, of Portland, on the brief) for respondent.

310

BRAND, J. The plaintiff surety companies contend that the defendant Occidental Company was required by the above quoted terms of the bond to protect the Warren Company by assuming the defense of the tort claims and by paying Malben and Redd and that: by reason of the failure of the defendant to do so the plaintiffs were required to make the payments and incur the expenses set forth in the stipulation. The obligation of plaintiff companies to do so grew out of the liability policies which plaintiffs had issued to the Warren Company. They now seek subrogation to the rights of the Warren Company against the defendant

Occidental Company. It was stipulated in substance that the payments made by the different parties in settling the two tort claims should not prejudice their rights as against each other in this action.

It appears that Anna Malben and Emma Redd were riding in the same car and were injured in the same accident. The one case went to judgment; the other was settled, but neither party to this controversy suggests that the fact that one case was settled rather than tried is of any importance. The judgment in the Malben case was obviously the basis of the settlement in the Redd case, and we shall assume for the purposes of this opinion that the rights of the two injured persons against the contractor and subcontractor were determined in the case that went to judgment.

■ The first question is whether the provisions of the bond on which the Occidental Company was surety should be construed to protect the Warren Company against claims of third persons based on tort. We must first seek to ascertain the intention of the parties as expressed in the instrument itself, bearing in mind that the Occidental Company was a compensated surety and that if the bond is susceptible of two constructions, the one which favors the insured must be adopted. *Title & Trust Co. v. United States Fidelity & Guaranty Co.,* 138 Or. 467, at 477, 1 P. (2d) 1100, 7 P. (2d) 805 (1932); *Byron v. First National Bank,* 75 Or. 296, 146 P. 516 (1915); *Purcell v. Washington Fidelity National Insurance Co.,* 141 Or. 98, 16 P. (2d) 639 (1932); *State, for use and benefit of Stater Motor Co., Inc., v. Metropolitan Casualty Insurance Co. of New York,* 145 Or. 367, 26 P. (2d) 1094 (1934); *Lane v. Brotherhood of Locomotive Enginemen and Firemen,* 157 Or. 667, 73 P. (2d) 1396 (1937).

318

■ A support for its contention that the bond does not extend indemnity as to claims of third persons based on tort, the defendant relies upon the rule that general words following words of particular description are limited in meaning to the scope of the particular words. The doctrine (ejusdem generis) is primarily a rule of statutory construction and "has been held especially applicable to penal statutes." 59 C. J. pp. 981, 982, § 581. It has, of course, been applied with some qualifications to the construction of contracts. 17 C. J. S. p. 731, § 313. However, when invoked to restrict the scope of language in a bond of a compensated surety the force of the rule is lessened by its impact with a rule of liberal construction not applicable to penal statutes.

■■ Turning to the "now therefore" clause of the bond, we find that all of what we shall call "part one" thereof refers to the liability of the surety if the subcontractor fails to perform the contract and to "save the obligee herein any expense incurred through the failure of said principal herein to complete the work as specified." It imposes upon the surety, liability only in the event of breach of contract. Then follows "part two", an undertaking to save the obligee "from any damage growing out of the carelessness of said subcontractor or its servants." We conceive that torts might be and in fact were committed by the subcontractor which did not involve any breach of the contract to "complete the work as specified." The provisions for protection against the subcontractor's negligence were in no sense "general words following words of particular description." The rule of *ejusdem generis* is peculiarly applicable where specific enumeration precedes the words "other" or "any other", followed

by general words, as in *Kirkley v. Portland Electric Power Co.,* 136 Or. 421, 298 P. 237 (1931), but in the case at bar, the undertaking conditioned upon the completion of the contract is stated in as general terms as is the undertaking to save from damages growing out of carelessness, and the two parts belong to wholly different classes, the one contract, the other tort. Concerning *ejusdem generis,* it is said,

> "The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes." 59 C. J., p. 982, § 581, and cases cited thereunder.

Counsel for defendant considers part two (concerning negligence) to be the general, and part one (concerning contract) to be the specific provisions of the bond. Yet, if we eliminate the contract portion and consider only the so-called general clause concerning negligence "in its unrestricted sense", we would have destroyed the major coverage of the bond. Obviously, therefore, the undertaking to save from damages growing out of carelessness cannot be restricted by the rule of ejusdem generis. The so-called particular words concerning performance of the contract are not included in the so-called general words concerning tort.

The bond given by the subcontractor to the principal contractor was not a "statutory bond", not being required by any law, but it appears that the language defining the undertaking to fully perform the contract closely follows the provisions of the Revised Code of Montana, 1935, Anno., § 5668.41, as to the contents of bonds on public contracts, and specifically covers the entire field, insofar as the contract is concerned. However, the statutory provisions contain no reference to

protection from torts, and when the bond employs language indemnifying against negligence, it enters a distinct field outside of statutory requirements.

> '' And where the particular words embrace all the persons or objects of the class mentioned, and thereby exhaust the class or genus, there can be nothing ejusdem generis left for the rule to operate on, and a meaning must be given to the general words different from that indicated by the specific words, or there can be ascribed to them no meaning at all.'' 25 R. C. L. p. 999, § 240.

The third part of the bond again returns to the matter of payment of wages, material, and the like, and further incorporates the contractual and statutory duties as to public contracts. The fourth portion of the bond fortifies our conclusion that the instrument itself manifests an intent to indemnify against third party torts. The language is as follows:

> ''* * * *and shall also save and keep harmless the said obligee against any and all losses to it from any cause whatever, including patent, trademark and copyright infringements, in the manner of constructing said section of work, then this obligation shall be void or otherwise it shall remain in full force and effect.''* (Italics ours.)

Payment by the indemnitee of a judgment obtained by a third party under the circumstances disclosed in this case would be a loss caused ''in the manner of constructing said section of work.''

The defendant relies upon *Schisel v. Marvill,* 198 Iowa, 725, 197 N. W. 662 (1924). In that case, as in *State ex rel. Hagquist, v. United States Fidelity & Guaranty Co.,* 125 Or. 13, 265 P. 775 (1928), it was held that certain statutory bonds cannot be voluntarily enlarged so as to include extra-statutory provisions.

The reason for the rule is based upon the proposition that the insertion by the public corporation of stipulations beyond the purview of the statute would be ultra vires. As we have observed, the bond given by the subcontractor followed in part the form required by statute from the Warren Company, but there was certainly no want of authority on the part of the Warren Company to demand of its subcontractor any bond it desired. Since the latter instrument was not a statutory bond at all, the case of *Schisel v. Marvill,* supra, has no application.

■ Defendant argues that the clause concerning negligence should be restricted to some careless act "causing physical damage to the highway", but if the highway was damaged negligently or otherwise there would have been a breach of the subcontract and of the provisions of the bond conditioned for the faithful performance thereof. If the only purpose was to indemnify against such damage the clause concerning negligence would have been unnecessary.

■ We are asked by the defendant to look outside the terms of the contract and consider whether the parties intended that third party torts should be covered by the bond. It is argued that the Warren Company exclusively relied upon liability insurance for protection from torts and therefore that the bond of the defendant company should be construed as merely providing protection against the failure of the Thomlinson Company to render full performance of its subcontract. The policies of liability insurance executed by the plaintiffs were issued before the execution of the subcontract between the Warren Company and the Thomlinson Company and indemnify against tort liability in connection with the whole field of the principal contract

between the Warren Company and the State of Montana. It was not limited to the field covered by the subcontract. There was no evidence which would warrant us in finding, contrary to the apparent tenor of the bond, that the Warren Company relied exclusively upon the liability policies and not at all upon the bond for indemnity against tort liability.

■ Again, the defendant relies upon the following provisions of the contract between the Warren Company and the Thomlinson Company. It was therein provided that the Thomlinson Company shall

"* * * at its own expense carry public liability insurance for the account of itself and its principal."

The defendant construes this to mean that the Thomlinson Company was to pay for public liability insurance in which both the Warren Company and the Thomlinson Company should be named as the assured. It would then follow, argues the defendant, that the Warren Company, being expressly insured against liability on account of torts by the subcontractor, should be presumed to have relied exclusively upon such insurance. It is argued that the Thomlinson Company was guilty of a breach of contract in that it secured a liability policy from the defendant Occidental Company which failed to name the Warren Company as one of the insured. It is suggested that the Warren Company nevertheless manifested an intent to rely upon the promised liability policy. We think that the quoted provision from the contract has been misconstrued by the defendant. It was not agreed that the Thomlinson Company should carry public liability naming both the contractor and the subcontractor as beneficiaries but only that the subcontractor should carry public liability "for the account of" itself and the principal. This the

Thomlinson Company did, and thereby it increased its financial ability to answer to the Warren Company if the Warren Company should become liable by reason of a third party tort committed by the Thomlinson Company. We conclude that there are no extraneous circumstances which could move us to construe the bond of the defendant company less broadly than its terms imply.

██ The defendant contends that the provisions of the subcontract which required the Thomlinson Company to do the work strictly in accordance with the provisions of the principal contract and to the satisfaction of the engineer of the State Highway Commission transformed the engineer into an agent of the Warren Company and transformed the Thomlinson Company from an independent subcontractor into an agent of the principal contractor. It therefore contends that, because of the right of the Warren Company through its engineer to control the details of the work on the subcontract, the negligence of the Thomlinson Company in injuring Anna Malben and Emma Redd became the negligence of the Warren Company under the rule of respondeat superior. This contention is without merit. The highway engineer was the agent of the state, having supervision over both the general contractor and the subcontractor. The provisions of the subcontract that the work be done subject to his approval did not transform the state highway engineer into a representative of the principal contractor. It simply gave him the usual right of supervision over both contractors. The theory of the defendant is inconsistent with the stipulation of the parties, which provided in part as follows:

"The subcontractor then undertook to perform the work sublet to it and from that time on no officer

or employee of the general contractor was actively engaged in that portion of the project though a resident engineer of the State of Montana was on this job from then on and the work was carried on under his direct supervision and control."

The foregoing contention is mentioned because it was urged upon us at considerable length, but for reasons which will be made clear we consider it immaterial whether the Thomlinson Company was an independent contractor or an agent of the Warren Company. Under the facts of this case and upon the weight of authority, the Warren Company would be entitled to indemnity from the Thomlinson Company even if the negligence of the Thomlinson Company were, in the Malben case, imputed to the Warren Company under the doctrine of respondeat superior.

The defendant asserts that there is a well established rule of construction that a contract of indemnity should not be construed to indemnify against the negligence of the indemnitee unless it is so expressed in unequivocal terms, citing in support 12 A. L. R. 1409, *Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen*, 74 F. (2d) 983, and *St. Louis S. W. R. Company v. Arnold*, 32 Tex. Civ. App. 272, 74 S. W. 819. Relying on this rule, the defendant claims that

"There is no clear unequivocal language in the bond indemnifying the Warren Company against loss sustained through its own concurring negligence."

It is therefore argued that the Warren Company could have no cause of action upon the bond. At this point a distinction must be made. If an indemnitee negligently causes injury to a third party and thereby suffers liability and loss by reason of its own sole negli-

gence, it is properly held that he cannot have indemnity in an action on a bond against the indemnitor, unless it is clearly made manifest in the bond that it was intended to cover the indemnitee against his own negligent acts. The *Southern Bell Telephone & Telegraph Co.* case, supra, was of this type. There was a contract between a city and the telephone company whereby the city was authorized to use the company's poles and had agreed to indemnify and save the company harmless from all damages that might arise by reason of or in connection with the operation by the city of its wires on the poles of the company. A workman climbed the pole, which fell down, causing him injury. It was held that the telephone company was guilty of the negligence which caused the injury to the workman and that the injury was not contributed to by any negligence chargeable against the city. The telephone company paid the injured workman and sought contribution from the city under the indemnity contract. It was held that the contract should not be construed to indemnify the company against loss caused by its own sole negligence, there being no words clearly manifesting such intent. The principle contended for by the defendant was, no doubt, properly applied in that case.

A second situation arises when a third party is injured by the concurrent negligence of two defendants. When the negligence of both is equal in degree, there is no right of contribution between the defendants, and a fortiori there would be no right of indemnity one against the other. In such a case also it may be that one tortfeasor could not recover against the other upon a bond of indemnity unless the intent to cover that situation was clearly made manifest. *St. Louis S. W. R. Company v. Arnold,* supra.

■ Where, however, two have been held liable to a third person for negligence, but as between themselves one of them is entitled to indemnity from the other, an entirely different situation arises. The case at bar is of that kind. Here the Warren Company seeks indemnity for the negligence, not of itself, but of the subcontractor. It is argued that by the judgment in the Malben case, it was conclusively determined that the Warren Company was a joint tortfeasor guilty of concurrent negligence. It is clear that the fact of the judgment in the Malben case and of the settlement in the Redd case established that both defendants therein owed money to the injured parties, but the judgment did not, as between themselves, determine which of the defendants was negligent or whether either of them was entitled to indemnity from the other.

"The rendition of a judgment in an action does not conclude parties to an action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves." Restatement on Judgments, p. 384, § 82.

"The general rule is that parties to a judgment are not bound by it in subsequent controversies between each other, where they are not adversaries in the action in which the judgment is rendered. This is true whether the judgment is rendered in favor of the plaintiff, or determines the issues in favor of the defendants. The rule applies to a fact which might have been, but was not, litigated in the original action. The theory of the many decisions supporting the general rule is that the judgment merely adjudicates the rights of the plaintiff as against each defendant, and leaves unadjudicated the rights of the defendants as among themselves." 30 Am. Jur. (Judgments) p. 966, § 233.

101 A. L. R. 105, 116 et seq.; *Snyder v. Marken,* 116 Wash. 270, 199 P. 302 (1921); *Boston & Maine Railroad*

*v. Sargent,* 72 N. H. 455, 57 A. 688 (1904); *Colorado &
Southern Railway Co. v. Western Light & Power Co.,*
73 Colo. 107, 214 P. 30 (1923); *Missouri District Tele-
graph Co. v. Southwestern Bell Telephone Company
et al.,* 336 Mo. 453, 79 S. W. (2d) 257 (1935); *Fulton
County Gas and Electric Company v. Hudson River
Telephone Company,* 200 N. Y. 287, 93 N. E. 1052
(1911); *Pearlman et al. v. Truppo,* 10 N. J. Misc. 477,
159 A. 623 (1932); *Wiles v. Young,* 167 Tenn. 224, 68
S. W. (2d) 114 (1934); *Merrill v. St. Paul City Railway
Co.,* 170 Minn. 332, 212 N. W. 533 (1927).

*Commercial Casualty Insurance Co. v. Petroleum
Pipe Line Co.,* 83 F. (2d) 412 (1936), is not in point.
In that case the relative rights of the defendants inter se
were in fact adjudicated by the prior judgment. *Lowe
v. Harmon,* 167 Or. 128, 115 P. (2d) 297 (1941), states
the general rule but is not applicable to the situation
before us.

The two defendants in the Malben case were not
adversaries. The complaint raised no issue as to the
respective duties of the defendants inter se, nor was
that question raised by any pleading between the de-
fendants. On the contrary, the stipulation of the parties
establishes that the plaintiff's allegations of negligence
were controverted by both defendants. It follows that
the Warren Company and the subcontractor were free
to litigate the question of their rights between them-
selves, notwithstanding the Malben judgment.

Turning to the stipulated facts in the case at bar, we
find that after the execution of the contract,

"* * * no officer or employee of the general
contractor was actively engaged in that portion of
the project * * *."

Since the negligent injury of Malben and Redd was
occasioned by the manner in which the work was done

by the subcontractor, the principal contractor not participating therein, and since the subcontractor had obligated itself to save the principal contractor from any damages growing out of the carelessness of the subcontractor and to save and keep the principal contractor harmless against any and all losses to it from any cause whatever in the manner of constructing said section of work, it necessarily follows that as between the contractor and the subcontractor the latter was primarily liable on account of its own active negligence, and the principal contractor was liable to Malben and Redd only because of a non-delegable duty which the law imposed upon it. The Warren Company was held liable to Malben and Redd because the subcontractor had failed in its agreement to perform the duties which it had assumed and which, if performed, would have discharged the Warren Company's duty to the public. If the principal contractor thereafter sought indemnity against the subcontractor, it would not be asking to be indemnified against its own negligence, but only against the negligence of the subcontractor. It follows that *Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen,* supra, and *St. Louis & S. W. Railway Co. v. Arnold,* supra, cited by the defendant, have no application. Concerning the right of the principal contractor to indemnity from the subcontractor under these conditions, there can be no question.

"A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Restatement on Restitution, p. 331, § 76.

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to in-

demnity from the other for expenditures properly made in the discharge of such liability.''

"A employs B as an independent contractor to dig a deep trench on A's land adjacent to the highway. B negligently fails to take the precautions specified by A to protect travelers and C, a traveler, is injured by falling into the trench. C obtains a judgment against A and B. A pays the judgment. He is entitled to indemnity from B.'' Restatement on Restitution, p. 418, § 96, and Illustration One thereunder.

The rule of the Restatement on Restitution, Section 96, applies to various situations in which the active negligence of one is imputed to another. It applies to the right of indemnity of a master who has been held liable under the doctrine of *respondeat superior* for the negligence of his servant (*Fedden v. Brooklyn Eastern District Terminal*, 204 App. Div. 741, 199 N. Y. S. 9, 1923; *Kampmann v. Rothwell*, 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758) 1908; to the right of a principal who has been held liable for the fraud of his agent (*Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co.*, 11 Fed. (2d) 87; and see notes on Restatement on Restitution by Seavey and Scott, Section 96); to the right of an owner held liable for the negligence of an independent contractor (*Bankers Surety Company v. Jefferson Realty Company*, 143 Ky. 549, 137 S. W. 224; *Kampmann v. Rothwell*, supra; *Standard Oil Co. v. Robbins Dry Dock and Repair Co.*, 32 F. (2d) 182; *Ecuyer v. Benevolent Association of Elks*, 152 La. 73, 92 So. 739; and see Notes on Restatement on Restitution, Section 96.) The rule applies to a vendee held liable for the primary negligence of the vendor (*The Pullman Company v. Cincinnati New Orleans & Texas Pacific Railroad Co.*, 147 Ky. 498, 144 S. W. 385); to a principal contractor held liable for the

negligence of a subcontractor *(John Griffiths & Son v. National Fire Proofing Company,* 310 Ill. 331, 141 N. E. 739, 38 A. L. R. 559) ; to a lessee for the negligence of a sublessee *(Oceanic Steam Navigation Company v. Compania Transatlantica Espanola,* 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 685).

It follows that if the Warren Company had paid the damages which were caused by the primary negligence of the Thomlinson Company, the latter company would have a duty to indemnify the former, and it is imma-. terial whether the relation between them was that of master and servant or contractor and subcontractor. Under the plain terms of the bond the Occidental Company assumed the same obligation to the Warren Company as did the Thomlinson Company in this respect, and it, too, incurred a duty to indemnify.

One question which received no attention in the briefs was raised at the oral argument. If the bond of the Occidental Company should be strictly construed as indemnity against "loss" rather than against "liability" can it be said in this case that the Warren Company suffered "loss" in view of the fact that the claims of Malben and Redd were paid directly by the plaintiff surety companies? We think it unnecessary to decide whether the indemnity was against liability or only against loss, though there is language in the bond which suggests that it was conditioned to "save * * * from damages" rather than to indemnify against actual loss. If the Warren Company had drawn checks to Malben and Redd and had at the same moment received checks in the same amounts from the plaintiffs, there would be no question but that it had suffered loss and damage entitling it to recover on the bond executed by the subcontractor and the defendant surety company. The fact that the payment was made directly to Malben and

Redd, instead of through the Warren Company as a conduit, constitutes a difference without a valid distinction. The payments were made for and on behalf of the Warren Company, and so far as the Occidental Company was concerned they should be deemed to have been made by the Warren Company. Furthermore, the Warren Company had bought liability insurance from the plaintiff surety companies. That insurance was an asset, and that asset was employed and expended to satisfy the liability of the Warren Company to the tortfeasees. The Warren Company did in truth suffer not only liability but damage.

■ The only remaining question is whether the plaintiff surety companies who paid Malben and Redd for and on account of the Warren Company are entitled to be subrogated to the rights of the Warren Company on the bond. The plaintiffs were not volunteers. No question is raised concerning the obligation which rested upon the plaintiffs to protect the Warren Company from the claims of Malben and Redd, and so far as the record shows they made the payments without themselves questioning that obligation. We have no quarrel with the general principles set forth in the authorities cited by the defendant upon this issue. This court has recognized the equitable basis upon which the right of subrogation rests and has stated the conditions under which it may be asserted. *United States Fidelity & Guaranty Co. v. Bramwell,* 108 Or. 261, at 277, 278, 217 P. 332, 32 A. L. R. 829 (1923). We recently said of that case:

> "The principles upon which the right of subrogation rests have been adequately set forth in the Bramwell case, supra. We accept them as there stated. If plaintiff is to prevail it must show that the equities of the surety are clear and are superior

to those of the defendants." *American Surety Co. v. Multnomah County,* 171 Or. 287, 138 P. (2d) 597.

Again, we said:

"The right of subrogation depends upon the facts and circumstances of each particular case, to which must be applied the principles of justice." *American Central Insurance Co. v. Weller,* 106 Or. 494, at 502, 212 Pac. 803, (1923).

*Travelers' Insurance Co. v. Great Lakes Engineering Works Co.,* 184 F. 426, 36 L. R. A. (N. S.) 60 (1911), bears a close resemblance to the case at bar. The plaintiff insurance company issued a liability policy to a brewery company. The latter was held liable for the injury to a third person when a cylinder head of an engine blew out. The explosion was caused by the negligence of an engineering company which was engaged in installing the engine for the brewing company. The plaintiff surety paid the judgment and was held entitled to subrogation to the rights of the brewery company if, as between the brewery and the engineering company, the negligence was solely that of the latter. A similar ruling was made in *London Guarantee and Accident Company, Limited, v. Otis Elevator Company,* 86 Ind. App. 150, 155 N. E. 182 (1927). If, as these authorities indicate, the plaintiffs should be subrogated to the rights of the Warren Company against the Thomlinson Company on the bond, we think they are equally entitled to prevail against the Occidental Company which has an identical obligation on the same bond.

We find that the equities of the plaintiff surety companies are clear and are superior to those of the defendant Occidental Company. It is true that both the plaintiffs and the defendant are compensated sureties, but the defendant surety company directly obligated itself to protect the Warren Company from loss by

reason of the negligence of the subcontractor. Had it done so no obligation of the plaintiffs would have arisen. The defendant surety company was undoubtedly paid on the basis of the amount of risk assumed in connection with the performance of the subcontract, and we have held that the liability to Malben and Redd was one of the risks which they assumed. The liability policies issued by the plaintiffs in favor of the Warren Company were delivered a few days prior to the execution of the subcontract, but the policies, which are set forth in the abstract of record, disclose that it was contemplated that portions of the principal road contract would be let to subcontractors. The premium was based upon the amount of the total remuneration of all the employees of the Warren Company during the period of the policy. The result was that the plaintiff sureties received a low premium as payment for the risk which they assumed by reason of the fact that much of the work was done under the subcontract by persons not employees of the Warren Company. The remuneration of the employees of the subcontractor was not included in calculating the premium to be received by the plaintiff surety companies. Under these circumstances it would be inequitable to require the plaintiffs to bear the ultimate loss occasioned by the wrongful failure of the defendant surety company to protect the Warren Company in accordance with the terms of its bond.

The case at bar must be distinguished from such cases as *Meyers v. Bank of America National Trust & Savings Association,* 11 Cal. (2d) 92, 77 P. (2d) 1084 (1938) and *American Surety Company of New York v. Citizens' National Bank of Roswell,* 294 F. 609 (1923). These and many others are cases involving claims based on subrogation of a surety on a fidelity bond against a bank which has paid forged checks. The

cases may differ on their specific facts, but they appear to rest upon a common basis which distinguishes them from the case at bar. Subrogation is not granted or withheld upon the basis of strict rules of law but upon principles of fair dealing. *Meyers v. Bank of America National Trust & Savings Association,* supra, is typical. A surety company had executed a bond guaranteeing the fidelity of an employee of a corporation. The employee wrongfully endorsed the corporate name on checks payable to the corporation, transferred the checks for full value to a third person and embezzled the proceeds. The checks were deposited with the defendant bank, which credited the depositor and collected from the drawees. The surety on the fidelity bond made good the loss to the corporation and sought subrogation against the bank. It was denied relief, being unable to show equity superior to that of the bank. The reasoning runs thus:

> "The primary cause of the loss was the forgeries committed by the employee, whose integrity was at least impliedly vouched for by his employer to the bank."

The surety was paid to take the risk. The bank was an "innocent third party", not a wrongdoer. It had no reason to doubt the genuineness of the checks. It received no benefit from the transaction. True, it was liable to the corporation because it paid the forged checks, but equity found neither negligence nor intentional wrong on its part. The surety could be in no better position than the corporation to whose rights it sought subrogation, and the corporation was at least "impliedly" at fault in its relation to the bank. The "primary cause of loss" was on the side on which the surety stood. In the case at bar, however, the primary wrong was not on the side on which the plaintiff sureties

stand but upon the side of the defendants. Again, in the Meyers case, supra, the bank was liable but was not blameworthy. In the case at bar the defendant surety owed to the Warren Company the same duty which the Thomlinson Company owed. It knew the terms of its own bond and deliberately refused to accept the defense of the Warren Company or to save that company from loss. It was blameworthy.

Defendant also cites *Amick v. Columbia Casualty Company*, 101 Fed. (2d) 984 (1939), and *Northern Trust Company v. Consolidated Elevator Company*, 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510 (1919). We find nothing in these cases which militates against our conclusion here. *American Central Insurance Co. v. Weller*, supra, is not in point. In that case if subrogation had been granted to the insurer it would have resulted in holding a blameless seller of an automobile liable for its conversion by the purchaser. This equity would not permit.

As a final summary of its position, the defendant contends that in carrying out the directions of the state's engineer, the Thomlinson Company "necessarily" committed acts of negligence against Redd and Malben and that the state's engineer was the agent of the Warren Company. Thus, the defendant concludes that the Warren Company was guilty of active concurrent negligence, and the plaintiffs' equities would not be superior to the defendant's. If their premises should be granted there would be much to be said for their conclusion. However, we find no support in the pleadings or stipulation for the proposition that the subcontractor was required by the engineer to injure Malben and Redd, and we have already rejected the contention that the engineer was the agent of the Warren Company.

Defendant contends that the Occidental Company itself has rights of subrogation, but, as we have seen, if we place the Occidental Company in the shoes of the Thomlinson Company and the plaintiffs in the shoes of the Warren Company, we find the plaintiffs entitled to indemnity from the defendant. Furthermore, the Occidental Company, in addition to assuming the obligations set forth in the bond, also, for a stipulated premium, issued to the Thomlinson Company a liability policy whereby it became obligated as between itself and its insured to protect the insured from loss on account of tort liability to third persons. When, therefore, the defendant indemnifies the plaintiffs for payments which the plaintiffs made on account of the tort of the Thomlinson Company, it will be doing only what it has been paid to do.

The plaintiffs have, without objection, joined their respective claims in a single action, seeking a single judgment against the defendant. They appear here by the same attorneys. Both parties have stipulated that the court may fix attorney fees. The plaintiffs jointly will therefore have judgment in accordance with the prayer of the complaint for the sum of $2,061.05, together with interest thereon from July 14, 1939, at six per cent per annum, and a reasonable attorney fee of $300 on the first cause of action. On the second cause of action plaintiffs will have judgment for the sum of $988, with interest thereon from July 14, 1939, at six per cent per annum, and a reasonable attorney fee of $100. Plaintiffs may have judgment for a lump sum of $300 as a reasonable attorney fee for their services in this court.

The cause will be remanded to the circuit court for the taxing of costs therein and for entry of judgment in accordance herewith.