Lela O. FRITTS, Plaintiff,

v.

SAFEWAY STORES, INCORPORATED, a corporation, Defendant and Third-Party Plaintiff,

v.

BOHM ELECTRIC, INC., an Oregon Corporation, et al., Third-Party Defendants.

Civ. No. 73–61.

United States District Court, D. Oregon.

Feb. 23, 1976.

Paul R. Duden, Portland, Or., for Safeway Stores.

Gerald R. Hayes, Portland, Or., for Bohm Electric Inc.

Thomas Cavanaugh, Portland, Or., for Kroske's Glass & Paint Supply.

## OPINION

BURNS, District Judge:

Safeway Stores, Inc. claims the right to be indemnified by the third party defendants for a $12,000.00 judgment recovered by plaintiff against Safeway. This case reveals the perils of traversing automatic doors, failing to contractually establish duties and responsibilities, and notching dovetails. I will treat those perils in that order.

## I. FACTUAL BACKGROUND:

The first peril was painfully demonstrated to Mrs. Lela Fritts. While she paused in the threshold of plaintiff's Burns, Oregon, store to rearrange grocery bags in her arms, the door suddenly closed. It struck Mrs. Fritts, causing injuries and damages which she recovered from Safeway in this court.[1] Safeway impleaded and now seeks indemnity from three parties allegedly responsible for the doors' injury-causing defect: the manufacturer, Stanley Works, Inc. (Stanley), its Oregon distributor, Bohm Automatic Doors, Inc. (Bohm), and the purported installer, Kroske's Glass and Paint Supply Co. (Kroske). The distributor-installer distinction, however, was hazy; no contract between the parties clearly delineated their respective duties and responsibilities. Consequently the actual events which preceded Mrs. Fritts' injury, rather than the language of any contract, form the foundation for the parties' respective duties. This Court's jurisdiction is founded on diversity of citizenship, 28 U.S.C. § 1332.

Stanley, a Connecticut corporation, distributes its automatic door opening device in Burns and other locations in Oregon through Bohm. Their contract provided that Stanley would not install the door opening devices. Stanley did, however, conduct classes explaining installation. Mr. Paul Folliard, Bohm's president, attended these classes and contractually agreed with Stanley to accept "full and complete responsibility of adequately instructing the installer of each installation in his territory." (Safeway Exh. 3 cl. 5.)

Bohm successfully bid on the Burns Safeway store construction contract to provide its automatic doors. The contract for the glass and frames of the doors, however, eventually went to third party defendant Kroske. At this point, the respective responsibilities of each becomes hazy.

The persons who actually installed the complete door—automatic device, glass, frame, and mats—were two men who customarily worked for Kroske: Mr. Houk and Mr. Miller. They did not install the door at Mr. Kroske's behest, nor while Mr. Kroske was at the construction site. Both men testified that they understood that they were under Mr. Folliard's supervision, and Mr. Kroske never received any payment for their work.

Although neither Mr. Houk nor Mr. Miller had ever installed an automatic door, their maiden attempt seemed successful. On the day of Mrs. Fritts' injury, however, a mistake manifested itself. By cutting two notches, each the size of a large tie clasp, on either side to two screw holes in the center of a two-foot long metal "dovetail," the men weakened that bar considerably. The combination of this structural weakness, Mrs. Fritts' weight, and approximately five years of use caused this dovetail located under

---

1. The issue of Safeway's liability, if any to Plaintiff Fritts, and the extent of her damages, was segregated for trial, resulting in the judgment in favor of plaintiff described above. Rule 42(b) F.R.Civ.P.

the rubber door mats to snap. This in turn shorted electrical wires running under the bar, interrupting the electrical impulse which normally caused the door to remain open while a person stood on the exit mat.

## II. LIABILITY OF THIRD PARTY DEFENDANTS:

(a) *Stanley.* Safeway contended Stanley had a duty to warn. Because there were insufficient facts at trial from which to impose such a duty to warn on either Safeway or the installers of the danger of "notching" dovetails, I granted Stanley's motion to dismiss at the close of Safeway's case.

■ (b) *Kroske.* Safeway is entitled to recover from Kroske under its negligence theory. Employees of Kroske, acting within the scope of their employment to Kroske, negligently installed the doors. Kroske's exclusion of automatic doors from his bid on the Burns installation does not render his employees' work on them outside the scope of employment; the exclusion did not reflect any aversion of Kroske's to such a job generally. Instead, it reflected only the fact that Kroske could not buy Stanley doors, the only kind Safeway wanted for that store. Yet both before and after the Burns installation, Kroske shed the clothing of a "glass and paint" supplier and installed automatic doors. Such installations were within the scope of Kroske's employment.

It also was foreseeable that Kroske's two mechanics would engage in automatic door work as a logical incident of their installation of the door and door frames; neither man considered the request unusual. Nor was the task done in furtherance of their own objectives; there is no evidence that they gained anything more than their customary pay from Kroske.

There is not sufficient evidence for a finding that Houk and Miller were loaned servants. Even if they were, Kroske would remain liable because he retained the power to direct and control Houk and Miller at the time of the defective installation.

Although case law has produced tests for determining a master's liability,[2] foreseeability, in light of the particular circumstances of each case, ultimately determines where liability should fall. In this case, Houk and Miller's actions were not unforeseeable; Kroske employees performed such generalized installations both before and after the Burns installation.

■ (c) *Bohm.* Bohm also was negligent. Because of this, I need not discuss the merits of Safeway's additional claims based on strict liability or breach of warranty. Mr. Folliard, consistent with his contractual duty to Stanley, remained at the construction site briefly before leaving; by his actions, he left upon both Mr. Houk and Mr. Miller the impression that he was to supervise them. He did not inquire of their experience, although he should have known that they had none. Certainly he knew of the complexity of the task, which was sufficient to compel the manufacturer to send him to regional training schools which explained the installation. Nevertheless, he left the men unsupervised at a critical phase of the installation. Both in entrusting the job to two novices and in failing to supervise them, Mr. Folliard breached his duty of due care to potential users of the door.

## III. SAFEWAY'S NEGLIGENCE AS A BAR TO RECOVERY:

■ In deciding this case, the laws of Oregon apply. *Siebrand v. Eyerly Aircraft Co.,* 196 F.Supp. 936, 941 (D.Or. 1961). Under Oregon law, an actively negligent party is entitled to indemnity only from parties who agree by contract to indemnify it. If no such contract exists, only a passively negligent party can successfully assert a right to indemnity. No contract of indemnity existed between the parties involved in this case;

---

**2.** *See, e. g. Barry v. Oregon,* 197 Or. 246, 253 P.2d 260 (1953).

Safeway therefore must be found passively negligent if it is to recover.

Classifying negligence as either "active" or "passive" cannot be done by referring to clearly defined standards or guidelines; none exist. Reference instead must be made to experience and one's sense of equity. The Oregon Supreme Court recognized this in *General Insurance Co. v. P. S. Lord,* 258 Or. 332, 336, 482 P.2d 709, 711 (1971), when it borrowed the following from Prosser:

> "'[I]t is extremely difficult to state any general rule or principle as to when indemnity will be allowed and when it will not.' He formulated the rule: '. . . [T]he duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other.' Prosser, Torts, 281 (3d ed.)." [3]

I am convinced that community opinion would favor Safeway's claim here. No previous accidents occurred which would put Safeway on notice of the defect. Nor was Safeway negligent in its choice of subcontractors; it was not required to foresee that Bohm would breach its contractual duty with Stanley and deviate from its customary exercise of prudence and caution in having the doors installed. Safeway did not affirmatively undertake to supervise the installation, nor was it negligent in failing to supervise the installation.

I also find support for this conclusion in the Restatement of Restitution § 95, which I believe the Oregon Court would adopt [4] if faced with the question:

"§ 95. PERSON RESPONSIBLE FOR A DANGEROUS CONDITION.

Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

In the alternative, Safeway is entitled to indemnity because its liability was only vicarious. In strikingly similar circumstances, the Oregon Supreme Court in *Lipman-Wolfe & Co. v. Teeples & Thatcher,* 268 Or. 578–86, 522 P.2d 467, 470–71 (1974), recently examined the influence of a party's vicarious liability on its action for indemnity. The Court found that the store owner's liability for injuries suffered by a business invitee was based on the negligence of the store's independent contractors. It then concluded that the store owner was entitled to indemnity from those contractors under the general rule entitling a vicariously liable party to indemnity from those whose negligence gave rise to the liability. *See U. S. Fidelity and Guaranty Co. v. Thomlinson-Arkwright Co.,* 172 Or. 307, 329–30, 141 P.2d 817, 825 (1943); *Restatement of Restitution,* § 96, p. 418. *Lipman Wolfe* clearly mandates that Safeway's liability here is vicarious [5] and is not based on time honored principles

---

**3.** This portion of the opinion subsequently was cited approvingly in *Fulton Ins. v. White Motor Corp.,* 261 Or. 206, 211, 493 P.2d 138, 141 (1972).

**4.** In *General Insurance, supra,* at 336, 482 P.2d at 711, the Supreme Court cited approvingly Restatement of Restitution § 96, which deals with a similar problem: a vicariously liable party's right to indemnity from the primarily negligent party.

**5.** "Another reason why we prefer the doctrine of vicarious liability is that placing a duty upon a storekeeper to closely supervise its remodeling contractor appears to us to be unrealistic." 268 Or. at 587, 522 P.2d at 467. Imposing such a duty here also would be unrealistic; given the complexity of the task, the only person near Burns who understood how to install the door properly was Mr. Folliard, Bohm's president, who attended the classes held to disseminate that information. No employee of Safeway would have known that carving opposing notches on metal dovetails was an unsound practice.

governing the liability of landowners to invitees on their premises—principles under which Safeway might be found actively negligent.

Consequently, I find that plaintiff is entitled to indemnity from both Bohm and Kroske in the sum of $12,000.00.

The foregoing shall constitute findings of fact and conclusions of law in accordance with F.R.Civ.P. 52(a).